HIRAM TUCKER *vs.* MASSACHUSETTS CENTRAL RAILROAD.

Worcester.    October 6. — 22, 1875.    WELLS & AMES, JJ., absent.

If the effect of constructing a railroad through a farm is to make it more inconven-
ient and expensive for the owner to cultivate and manage his remaining land, this
is a proper element for the consideration of the jury on a petition for the assess-
ment of damages; and a witness who is acquainted with the land and knows its
capabilities and the proper mode of cultivating it, may give his opinion as to the
increased expense to the owner in carrying on the farm, arising from the location
of the railroad through it.

The question whether a witness has the requisite knowledge to enable him to give
an opinion is largely within the discretion of the judge or officer presiding at the
trial.

PETITION for the assessment of land damages sustained by the
petitioner by reason of the passage of the respondent's railroad
through his farm.

At the trial before a sheriff's jury it appeared that the farm,
containing about eighty acres, lay on both sides of an old estab-
lished highway, the house and about ten acres of land being on
the southerly side of the road, and about seventy acres of mow-
ing, garden, pasture, and tillage lands lying on the northerly side
of the highway.    The railroad ran through the whole length of
the seventy acres north of the road in a circular direction, not
far from the highway, leaving the largest portion of the cultivated
land across the railroad from his house, above and in the same
direction as the highway, cutting the seventy acres in two parts,
and rendering necessary some provision for passing and repassing
across the railroad in carrying on the farm.    The county com-
missioners had provided, in their order, for a cart and cattle pass
under the railroad, for two grade crossings, and another cattle
pass, and had ordered the railroad corporation to provide and
maintain these crossings in a suitable and convenient manner.

The petitioner called as a witness one Ruggles, who testified
that he resided about one fourth of a mile from the petitioner,
that he had observed the provisions for the petitioner to cross the
railroad, and the petitioner's mode and necessities in the manage-
ment of his farm; that he had been in the habit of taking down
and putting up bars himself as a farmer, and that there was an-
other railroad in operation running through his farm.    He was

then asked the following question : " What, in your opinion, is the increased expense to the petitioner in carrying on his farm arising from the construction of this railroad through it as located ? " To this question the counsel for the respondent objected, on the ground that it was not a proper subject for the opinion of witnesses, and further that if it were a proper subject for opinions, the witness had shown no such qualifications as would be necessary. The presiding officer permitted the question to be put, and the respondent excepted. The witness answered : " Fifty dollars per year." This matter of the inconvenient and expensive management of his farm, since the location of the railroad, was made by the petitioner an important element in his claim for damages.

The jury returned a verdict for the petitioner, which was accepted by *Colburn*, J., in the Superior Court, and the respondent appealed.

*W. S. B. Hopkins*, for the respondent.

*J. G. Allen*, for the petitioner.

MORTON, J.   The petitioner is entitled to compensation for all damages to his whole tract, including not only the value of the land taken, but all incidental injuries to his remaining land. If the effect of constructing the railroad through his land was to make it more inconvenient and expensive for him to cultivate and manage his remaining land, this might be, and there is nothing in the bill of exceptions to show that in this case it was not, an element proper for the consideration of the jury. The question how much his expenses of carrying on his remaining land in the future would be increased by the location of the railroad through his farm, is not one which is susceptible of demonstration as an existing fact. Like the questions which usually arise, when land is taken for a railroad or highway, of the value of the land taken, and of the appreciation or depreciation of the adjoining land, it is necessarily a matter of judgment and estimate. A witness who is acquainted with the land, and knows its capabilities and the proper mode of cultivating it, can form a more intelligent opinion than the jury, whose judgment, unless they can be aided by the opinions of such witnesses, must be formed solely upon a rapid view or a description of the premises. We are of opinion that the case at bar falls within the principle of the nu-

merous adjudications in this Commonwealth, which permit the opinions of competent witnesses to be given as to the value of land taken, or as to the damages or benefits to adjoining land, to aid the judgments of the jurors. *Vandine* v. *Burpee*, 13 Met. 288. *Walker* v. *Boston*, 8 Cush. 279. *Shaw* v. *Charlestown*, 2 Gray, 107. *West Newbury* v. *Chase*, 5 Gray, 421. *Swan* v. *Middlesex*, 101 Mass. 173. *Sexton* v. *North Bridgewater*, 116 Mass. 200.

The question whether a witness has the requisite knowledge to enable him to give his opinion is one which is largely within the discretion of the presiding judge or officer. In this case the witness was a farmer, having a farm near the petitioner's, which was divided by a railroad, who knew the petitioner's farm, his mode and necessities in the management of his farm and his means of crossing the railroad. We cannot see that the presiding officer erred in admitting his testimony.      *Verdict accepted.*