BOSTON AND MAINE RAILROAD *vs.* WILLIAM J. HUNT.

Worcester.    October 2, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Railroad*, Taking land by eminent domain. *Easement*, Extent of taking by eminent domain. *Equity Jurisdiction*, To enjoin continuance of repeated trespasses. *Trespass*, When restrained by injunction. *Equity Pleading and Practice*, Report, Appeal.

Under our statutes the taking by a railroad corporation by right of eminent domain of land for the making and maintaining of its road is substantially absolute so long as the land is used by the corporation or its lawful successors for the purposes of a railroad, and the damages given for the taking are assessed upon the theory that the occupation will be permanent and practically exclusive.

Under Gen. Sts. c. 63, § 21, which provided that a railroad corporation should "pay all damages occasioned by laying out and making and maintaining its road," the taking of a meadow with a brook running through it included the right of flowage for all purposes, and the damages paid for such a taking must be held to have included compensation for the loss of any such right.

In a suit in equity by a railroad corporation to enjoin the defendant from flooding his meadow in such a manner as to cause the water to flow on the railroad location of the plaintiff and to endanger the embankment on which one of its tracks was laid, it appeared that the defendant had no right to flood his land in the manner complained of, and that the defendant had committed trespasses by such floodings on five occasions, of which the last two were in successive years and continued for periods of some months. The judge who heard the case found that there had been no perceptible impairment or disintegration of the railroad embankment by the action of the water as raised by the defendant, but found that there was occasion for solicitude in regard to the safety of the embankment and the railroad track supported by it. *Held*, that an injunction should be granted to prevent the continuance of repeated trespasses.

A court of equity will interfere to prevent the continuance of repeated trespasses to real estate under a claim of an adverse right persistently asserted, although the wrongful acts separately may not have impaired materially the use and enjoyment of the property affected.

In a suit in equity, which had been reported by a judge of the Superior Court for determination by this court upon a memorandum of decision made by him, it appeared by the record that, after the memorandum of decision was filed, a decree for the plaintiff, which had been ordered by the judge, had been entered as a final decree and that the defendant had appealed. This court, after deciding that the plaintiff was entitled to a decree, *held*, that, although, as the case had been reported, the decree should not have been entered before the decision of this court, yet the defendant's appeal gave this court jurisdiction, and it was ordered that the decree be affirmed.

BILL IN EQUITY, filed in the Superior Court on April 6, 1909, by the Boston and Maine Railroad, as successor to the rights of

the Massachusetts Central Railroad Company, to enjoin the defendant from flooding a meadow belonging to him in Rutland in such a manner as to cause the water to flow on the railroad location of the plaintiff and to endanger the embankment on which one of its tracks was laid..

In the Superior Court the case was heard by *Aiken,* C. J., who made an order for a decree that an injunction should issue, and reported the case for determination by this court upon a memorandum of decision and a finding of facts made by him, which he stated to be all the facts material. If the decree was right it was to stand; if the decree was wrong, the bill was to be dismissed.

The memorandum of decision was as follows:

" The premises involved in this controversy are a meadow through which flows a brook. Thirty-eight years ago the Massachusetts Central Railroad by a taking under statute acquired a location five rods wide across this meadow, and on the location constructed an embankment eight feet in height on which tracks were laid, constituting a part of the through line of the railroad, over which trains have since continued to run. The plaintiff has succeeded to the rights of the Massachusetts Central Railroad and has maintained a train service, passenger and freight, over the embankment in the course of its regular business as a carrier. Previous to the taking of the location by the railroad first named the meadow had been a basin whereon by means of an artificial dam, from five to seven feet high, a pond was formed, and the waters accumulated were discharged at the dam into the brook below whence they flowed to a mill pond some distance down the stream and furnished the power that turned a mill. This mill was abandoned years ago, but whether before or after the taking of the location for railroad purposes did not appear.

"The defendant after he became the owner of the meadow, which was in 1892, removed portions of the dam, in particular, the flume which discharged the waters from the pond, the removal of this flume being three years after he acquired title. Portions of the dam, the sills for instance, still remained in position at the time of the hearing of the case in 1909. On five occasions while the defendant has been the owner of the meadow

he has, by placing obstructions in the brook at the site of the dam, flooded the meadow for the purpose of fostering the cranberries that grew spontaneously on the meadow or to make a pond for skating or to improve the meadow as he contended. These floodings did not occur in successive years, with the exception of the last two which were in the autumn and winter seasons of 1907 and 1908. The floodings in 1907 and 1908 continued on each occasion for periods of some months and were the only occasions which gave the servants and construction engineers of the plaintiff any concern. On these two occasions the defendant by placing railroad ties in the brook at the site of the dam raised the water about two feet and a half above what would have otherwise been its level, and caused the water to flow back upon and within the limits of the railroad location to a depth of fourteen inches and a width of fourteen feet for considerable distances, and also caused the water to come in contact with the foot of the embankment slope on one side. On neither of the two occasions was the water raised by the defendant to the height it used to stand at when the artificial dam created the pond previously mentioned, the water as raised by the defendant standing at a level two to four feet lower than the former pond level.

"While there has been no perceptible impairment or disintegration of the railroad embankment by the action of the water as thus raised by the defendant, I find that there is occasion for solicitude in respect to the safety of the embankment and the railroad track supported thereon. Paving or riprapping would protect the embankment sufficiently; the better course, however, is to remove the cause of the trouble as the plaintiff is bound to use the highest care and diligence to guard against such dangers as can be anticipated and avoided by human care and foresight."

The Chief Justice found that the plaintiff was entitled to an injunction and directed that the plaintiff should make a draft of a decree.

Later the Chief Justice made a final decree, which was entered, restraining the defendant from maintaining a dam or other obstruction upon his land in Rutland in such a way as to cause any part of the location of the Massachusetts Central Railroad Com-

pany or its successors to be overflowed. From this decree the defendant appealed.

*C. W. Wood*, for the defendant.

*C. M. Thayer*, for the plaintiff, was not called upon.

BRALEY, J.   The report under which the case is before us is conclusive upon all questions of fact as the evidence has not been transmitted, and by its terms the Massachusetts Central Railroad, to whose rights the plaintiff has succeeded, acquired by eminent domain a location through the meadow or farm owned by the defendant.   The right of way, even if defined as a public easement obtained by condemnation of the land, is substantially absolute so long as used for the purposes of a railroad by the corporation, or those succeeding by legislative sanction to its rights.   *Barnes* v. *Boston & Maine Railroad*, 130 Mass. 388, 389.   *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500, 502, 503.   It is because of these characteristics of complete possession and control that damages for the taking are assessed upon the theory, that the occupation will be permanent and practically exclusive.   *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1, 5.

The defendant's grantors at the time of the taking were entitled to "all damages occasioned by laying out and making and maintaining its road."   Gen. Sts. c. 63, § 21.   No reservations in their favor were made, and it must have been apparent, that the construction and maintenance of the road would encroach for the width of the location upon the area which could be flowed. The right of flowage for agricultural purposes, or for the cultivation or nourishment of cranberries, under St. 1866, c. 206, now R. L. c. 196, § 39, or to furnish mill power, having been injuriously affected, the owners could have recovered compensation under the statute, to be assessed in connection with such additional damages as the premises had sustained.   *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 91.   *Tucker* v. *Massachusetts Central Railroad*, 118 Mass. 546, 547.   *Drury* v. *Midland Railroad*, 127 Mass. 571.   *Fitz* v. *Nantasket Beach Railroad*, 148 Mass. 35.   *Fales* v. *Easthampton*, 162 Mass. 422.

The company having taken and paid for the location, the defendant, who neither by purchase nor by adverse user had gained a prescriptive title on the facts reported, could not lawfully over-

flow any portion without the plaintiff's consent.   By causing the waters of the brook to be set back to a height sufficient to infringe upon it, he became a trespasser.   *Cheney* v. *Barker*, 198 Mass. 356.   *Menut* v. *Boston & Maine Railroad*, 207 Mass. 12.   The injury resulting, although found to have been inconsiderable, arose from the exercise of an adverse right persistently asserted before the filing of the bill, and which the defendant now contends he should be permitted to enforce.   It is unnecessary in order for the plaintiff to obtain injunctive relief, that the evidence must show that irreparable injury has been caused, or is reasonably to be anticipated.   A court of equity will interfere to prevent the continuance of repeated trespasses, where the wrongful acts when viewed separately, may not have materially impaired the use and enjoyment of the property affected. *O'Brien* v. *Murphy*, 189 Mass. 353, 357.

The decree ordered was in accordance with what we have said, and protects the plaintiff, but it should not have been entered, as the case had been reported.   The defendant's appeal, however, gives us jurisdiction, and the decree should be affirmed. *Hildreth* v. *Thibodeau*, 186 Mass. 83, 84.

*Ordered accordingly.*