# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

JOSEPH T. LEROY & others *vs.* WORCESTER STREET RAILWAY COMPANY & others.

ADELAIDE F. STEVENS *vs.* WORCESTER STREET RAILWAY COMPANY.

Worcester. January 5, 1934. — June 4, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction,* To restrain operation of unlicensed motor bus. *Certiorari. Equity Pleading and Practice,* Bill. *Municipal Corporations,* Officers and agents. *License. Carrier,* Motor bus. *Corporation, Charter,* Railroad. *Eminent Domain. Railroad. Street Railway. Easement. Words,* "Approval."

In a suit in equity commenced in 1933 under G. L. (Ter. Ed.) c. 159A, § 15, by ten citizens of a city against a street railway company to enjoin the defendant from operating motor buses for the carriage of passengers for hire over a certain route on the ground that a license therefor previously obtained by the defendant from the licensing authority of the city under G. L. c. 159, § 45, in the amended form appearing in St. 1926, c. 392, § 1; St. 1927, c. 276, was invalid for want of proper approval by the mayor of the city, there was no merit in a contention by the defendant that the suit could not be maintained in that the sole remedy to correct errors of the licensing authority was by way of certiorari proceedings; the operation prohibited by both said § 45, in such amended form, and § 1 of said c. 159A included operation under a license invalid because not properly issued, so that the suit could be maintained under said § 15 "to restrain . . . [the] violation" of said c. 159A resulting from such operation.

The mere circumstances, that one of the plaintiffs in the suit in equity above described was the owner of property over which the defendant operated its bus route under color of an easement acquired by a predecessor in title by eminent domain, and that that plaintiff had brought another suit in equity against the same defendant to enjoin it from operating buses over his property on the ground that such operation was in excess of the defendant's easement, did not render the bill in the first suit open to attack on the ground that that plaintiff was "seeking to enforce . . . [his] private property rights as well as the alleged rights of the public in one bill of complaint," where the references in the bill in the first suit to the private rights of that plaintiff were merely incidental to other matters and the relief sought by that bill with respect to such private rights was merely to secure completeness in any injunction enjoining illegal operation over the entire route involved.

The provision of G. L. c. 159, § 45, in the amended form appearing in St. 1926, c. 392, § 1; St. 1927, c. 276, that licenses issued thereunder by the licensing authority of a city "shall be subject to the approval of the mayor and shall not be valid unless such approval has been endorsed thereon in writing," required the exercise of personal judgment and discretion by the mayor with respect to each license, which duty could not be delegated by him.

Where the mayor of a city gave general instructions to the clerk of the licensing authority thereof to indorse the mayor's approval by a rubber stamp upon all licenses of the character above described issued by the licensing authority unless the clerk was otherwise directed by the mayor; and several years later the clerk, without further direction by the mayor, so indorsed the mayor's approval upon a license so issued, there being no personal consideration thereof by the mayor, such license was invalid for want of proper approval by him.

The provision of G. L. (Ter. Ed.) c. 159A, § 1, that any license issued thereunder by a city council "shall be subject to the approval of the mayor," has substantially the same meaning as the comparable provision of G. L. c. 159, § 45, in the amended form appearing in St. 1926, c. 392, § 1; St. 1927, c. 276, in force previous to the enactment of said c. 159A by St. 1931, c. 408, § 1, that any license issued thereunder by a city council "shall be subject to the approval of the mayor and shall not be valid unless such approval has been endorsed thereon in writing"; and said provision of § 1 of said c. 159A requires affirmative approval by the mayor of such a license as a prerequisite to its validity.

Where, in a suit in equity under G. L. (Ter. Ed.) c. 159A, § 15, by ten citizens of a city against a street railway company to enjoin the defendant from operating motor buses for the carriage of passengers for hire over a certain route, it appeared that a license for such operation issued to the defendant was invalid for want of proper approval by the mayor of the city, the plaintiffs were entitled to the relief sought; and it was unnecessary to determine an issue raised in the bill, whether a certificate of public convenience and necessity, granted by the department of public utilities to the defendant after the issuance of such license, was invalid in that it was granted to the holder of a void license.

From the charter of a railroad corporation formed under a statute giving to the corporation all the powers and privileges set forth in all general laws relating to railroad corporations except as otherwise provided, including those conferred by the provisions of Gen. Sts. c. 63, § 119, that "No locomotive engine or other motive power shall be allowed to run upon a railroad constructed by authority of this state, except such as is owned and controlled by the corporation owning and managing the road, unless with the consent of the corporation," it was to be inferred that the corporation so formed was given the right to use other forms of motive power than steam and to. adopt modern inventions as to motive power.

Where such railroad corporation acquired by eminent domain an exclusive easement for a steam railroad over certain land, it also acquired the right to use on its location, for the same general purpose, namely, transportation, vehicles propelled by other forms of power later developed by invention; and the operation, many years later by a street railway company which was the successor in title to the property and rights of the railroad corporation, of motor buses carrying passengers over the location was not in excess of the easement so acquired, was not in violation of the rights of the owner of the land, and was not to be enjoined in a suit in equity by him against the street railway company.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Worcester on January 20, 1933.

Adelaide F. Stevens was one of the plaintiffs in the first suit. The bill in that suit contained allegations that "said license was invalid" because it and the petition therefor "erroneously, and in a misleading manner, described the private lands crossed in said location as property of the Worcester Consolidated Street Railway Company, whereas it was and still is the property of one of said plaintiffs, namely, said Adelaide F. Stevens, and said Worcester Consolidated Street Railway Company, and its predecessors and successors in title never acquired rights to operate motor buses thereon." Among other things, the plaintiffs sought to have the defendant railway company enjoined "from operating under said purported license any motor vehicle over said public ways and private lands for the carriage of passengers for hire." The defendant railway company's third ground of demurrer was that "the plaintiff, Adelaide F. Stevens, individually seeks to enjoin an alleged private trespass by the defendant upon land claimed to be owned by her as well as representing

herself to be one of the citizens of Worcester affected by the alleged violations of law by the defendant and is therefore seeking to enforce her private property rights as well as the alleged rights of the public in one bill of complaint."

Other material portions of the pleadings in the suits are described in the opinion.

In the first suit, the demurrer of the defendant railway company was overruled by a decree entered by order of *Field*, J. That defendant appealed. The suits were referred to a master for hearing together. Material findings by him are stated in the opinion. In each suit, an interlocutory decree was entered by order of *Field*, J., confirming the master's report. The single justice then reserved and reported the suits for determination by the full court.

*R. J. Hastings*, for the plaintiff Leroy.

*W. E. Mellquist*, for the plaintiff Stevens.

*C. C. Milton*, for the defendants.

CROSBY, J. These suits in equity, entered in the Supreme Judicial Court, were consolidated by order of court and heard together. An interlocutory decree overruled a demurrer in the first suit, an appeal therefrom being taken, and an interlocutory decree confirmed the master's report in each suit. A single justice, at the request of the parties, reported the cases and all questions of law therein for the consideration and determination of the full court.

The first case is brought by twelve citizens of Worcester under the provisions of G. L. (Ter. Ed.) c. 159A, to restrain a violation thereof alleged to be committed in the operation of motor buses for hire over a certain "Lake View Route" so called. The only ground of demurrer in this case which it is necessary to consider is that set forth, namely, that no facts are shown which entitle the plaintiffs to relief in equity. G. L. c. 159, § 45, in the amended form appearing in Sts. 1926, c. 392, § 1; 1927, c. 276, provided that no person or railroad or railway affording service similar to that given by a railway company shall operate a motor vehicle without obtaining a license granted by the city council. It appears that in the city of Worcester the authority to grant such licenses is vested in a license

board.  G. L. (Ter. Ed.) c. 159A, § 1, continues this provision, and § 15 of the same chapter (formerly G. L. c. 159, § 49) provides that "the supreme judicial and superior courts shall have jurisdiction in equity to restrain any such violation upon petition of the department, any licensing authority, ten citizens of any city or town affected by such violation, or any interested party."  The violation alleged is the operation without a license in that the license granted is not valid for want of proper approval by the mayor.  The defendants contend that the sole remedy to correct errors of the licensing board is by a writ of certiorari.  This contention cannot be sustained.  *Cheney* v. *Coughlin*, 201 Mass. 204.  In the case just cited it appeared that licenses for the sale of liquor were granted under circumstances which rendered them void.  R. L. c. 101, § 8, gave ten legal voters of a city or town a right to bring a suit in equity to enjoin the illegal keeping or sale of intoxicating liquors.  This court rejected the contention of the defendant that the plaintiffs' only remedy was by a writ of certiorari, and stated at page 207: "It has not infrequently been held that prerogative writs will not be issued in cases where another adequate remedy has been provided by statute."  It is plain that the "violation" of any provision of c. 159A carries the same respective meaning as "illegal keeping or sale" as used in R. L. c. 101, § 8.  Necessarily the "illegal keeping or sale" in R. L. c. 100, prohibiting the sale of intoxicating liquor referred to sales except as authorized in the chapter, i.e., without a license.  It is obvious that the court in *Cheney* v. *Coughlin*, 201 Mass. 204, held that a sale under a license improperly issued was included within the scope of a sale without a license.  In like manner the prohibited operation by the defendants in the present case without first obtaining a license, G. L. (Ter. Ed.) c. 159A, § 1, includes operation under a license that is void because not properly issued.  And this is also true because by the terms of St. 1926, c. 392 (in force at the time of the issuance of the alleged license), a license without proper approval of the mayor was not valid and hence was and is no license at all.

The plaintiff in the second case, Adelaide F. Stevens, is the owner of property over which the defendant runs its "Lake View Route" under color of an easement obtained by a predecessor in title by eminent domain proceedings. She alleges, in a bill brought individually, that a trespass is being committed by the defendant in that the operation of motor buses is not permitted by the easement. The fact that if the plaintiffs in the first case should succeed in maintaining their bill it might bring some measure of success in respect to a private right gives no substance to the defendant's third ground of demurrer in the first case that the plaintiff Stevens seeks in one bill to enforce private rights as well as those of the public. No reason is suggested by the defendant street railway company why the incidental protection of a private property right should prevent this plaintiff from joining with other citizens of the city affected by a violation of G. L. (Ter. Ed.) c. 159A.

So far as the bill in the first case contains allegations respecting the private rights of the plaintiff Stevens, this was incidental to the object of establishing a misdescription of the route over which a license to operate was sought; and, so far as relief in respect to those private rights was prayed for, this was to secure completeness of any injunction restraining illegal operation over the entire route involved.

The "license" issued to the receivers of the Worcester Consolidated Street Railway Company, predecessors of the defendant company, never was valid for lack of effective approval by the mayor. The master found that the only sanction by the mayor is that found in the general instructions, given several years before the grant of the license in question, that the clerk of the license board should indorse the mayor's approval by a rubber stamp on any license granted by the board (except in a case not here material) unless he was otherwise directed by the mayor. No other directions were given with reference to this particular license, and the clerk followed what had been customary procedure. The statute in effect on the date of issuance of the license was G. L. c. 159, § 45, in the amended form appearing in Sts. 1926, c. 392, § 1; 1927, c. 276. The important provi-

sion was that any license to operate a motor vehicle for hire should "be subject to the approval of the mayor" and should "not be valid unless such approval . . . [had] been endorsed thereon in writing." The city charter had an equivalent provision. The meaning of "approval" as used in statutes and in city charters with reference to contracts has often been defined. With respect to the "approval" by the bank commissioner of increases of the capital stock of a trust company (St. 1916, c. 37) the word "implies the exercise of sound judgment, practical sagacity, wise discretion and final direct affirmative sanction"; *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 420; so, also, where a city charter provides that a contract made by a department is not valid without the "approval" of the mayor. *McLean* v. *Mayor of Holyoke*, 216 Mass. 62, 65. When there is kept in mind the provision that no license is valid unless the mayor's approval is indorsed thereon in writing, it is plain that there must be an exercise of judgment and discretion by that official in respect to each license. Without approval of that nature no license can be valid. It has been so held many times in substantially similar provisions in statutory charters governing the execution of municipal contracts. *United States Drainage & Irrigation Co.* v. *Medford*, 225 Mass. 467, 472. *Parkhurst* v. *Revere*, 263 Mass. 364, 371. In the case at bar the general authority given the clerk to indorse the mayor's approval was not sufficient to meet with the requirements above recited. The statute contemplates by its terms that it is the "approval" of the mayor himself in respect to each license granted that is required, and not the action of a subordinate acting under a general authority, but not under specific directions from the mayor himself after the exercise of judgment and discretion in respect to a particular license. The statute vested in the mayor a matter involving the exercise of judgment and discretion. Such a duty cannot be delegated, and a previous general authority to act will not validate subsequent action in respect to a particular matter by the person to whom the proper official has sought to transfer his power. *Brown* v. *Newburyport*, 209 Mass.

259, 265, 266. In the case last cited a city treasurer was authorized to borrow "from time to time with the approval of the committee on finance." It was held that the word "approval" as there used imposed "active and important prudential obligations" in respect to each loan proposed, and that a previous and general authority to a certain official to act on behalf of the committee was insufficient to validate a subsequent loan. In the grant of a license to a common carrier for hire, numerous conflicting public and private interests may be involved. The requirement of approval of various municipal contracts by the mayor is designed as a check upon "hasty, ill-advised and inconsiderate actions" of departments. *United States Drainage & Irrigation Co.* v. *Medford,* 225 Mass. 467, 472. It is plain that a like check was intended in the present case, and that the mayor, and not a subordinate official, was the person to exercise it in each particular case. *Foss* v. *Wexler,* 242 Mass. 277, 282, cited by the defendant, did not hold that the authority of a board of street commissioners could be delegated to a clerk, but held only that the clerk of the board could indorse the commissioners' signatures, by means of a rubber stamp, in indication of their approval when directed by them to do so with reference to licenses on which they themselves had passed judgment.

The master found that a petition seeking a revocation of the license to operate motor buses over the "Lake View Route" by the defendant company was denied after hearing by the license board. This was at some time in 1932. It is conceivable that this might be regarded as the equivalent of a grant of a license to that company. St. 1931, c. 408, § 1 (now G. L. [Ter. Ed.] c. 159A, §§ 1–16), omits the provision that a license is not valid unless the approval of the mayor is indorsed thereon. Instead the provision is that "Any such license issued by a city council . . . shall be subject to the approval of the mayor." We are of opinion that no essential change in meaning was made. *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 420. If "direct affirmative sanction" is also implied in the case at bar it excludes any construction of the statute by which a license issued by the city council would be

valid in any case where the mayor did not disapprove it. Affirmative approval by the mayor is necessarily implied as requisite to its validity. It is not as if the statute declared that a license granted by the city council was valid unless the mayor disapproved it.

It follows that, since no valid license was issued to the Worcester Consolidated Street Railway Company, it is unnecessary to decide whether such a license could lawfully have been assigned to the purchaser of all its rights, property and assets.

It also follows that no action need be taken on the fourth prayer of the bill, that the certificate of public convenience and necessity granted by the department of public utilities to the defendant on November 21, 1932, be declared invalid. The provisions of G. L. (Ter. Ed.) c. 159A, § 15, are enacted for the purpose of permitting persons affected to restrain a violation of its terms. Therefore the validity of such a certificate could be passed on in a proceeding under that chapter only as an incident to proper relief. In the present case the invalidity of the license held by the defendants from the city in which the company operates is established, and this entitles the plaintiffs to relief when other elements of their case are proved. Accordingly, it is unnecessary here to determine whether the department could lawfully issue a certificate to the holder of a license which was void because not properly granted.

The demurrer to the bill in this case was properly overruled. A final decree with costs is to be entered restraining the Worcester Street Railway Company, its successors and assigns, from operating under its purported license motor vehicles for the carriage of passengers for hire over the "Lake View Route," so called, as set forth in the bill of complaint.

*Ordered accordingly.*

In the second case the plaintiff seeks to enjoin the operation by the defendant of motor buses over land of which she is the owner by a chain of title that includes a conveyance made in 1883 to a predecessor excepting "all the right, title and interest of the Worcester & Shrewsbury Railroad Co. to the land occupied by it at its road and loca-

tion . . . ." The defendant has succeeded to all the rights and property of the Worcester and Shrewsbury Railroad Company.

The master found as follows: This company's "right of way was laid out and a taking of an easement for steam railroad purpose through and over land of individual owners was made pursuant to the statutory provisions then in force. (Refer to Gen. Sts. c. 63, §§ 17, 18.) The right of way ran through land of which the plaintiff . . . has subsequently become and now is owner." Long prior to these proceedings the original operation of a narrow gauge steam railway was discontinued, and a double track electric trolley line was maintained on the location. In December, 1932, the defendant caused filling to be placed between the rails and on the shoulders of either side of the tracks so that use thereof might be made by motor buses. The defendant has since operated motor buses over the right of way. The master states that "Such use is clearly an enlargement of the rights originally intended to be acquired by the Worcester and Shrewsbury Railroad Company. Having in mind that the use of the right of way by the defendant corporation is solely devoted to the transportation of the public, whether by steam, electricity, or vehicles propelled by other power, I find, so far as the issue is one of fact and not of law, that the operation of motor buses thereover is not in violation of the easement rights acquired by the defendant's predecessor in title."

The plaintiff relies on the decision in *Agostini* v. *North Adams Gas Light Co.* 265 Mass. 70, which held that a railroad corporation in condemning land for its location generally obtains only an easement, and that this easement is co-extensive with but limited to such rights as are reasonably necessary to accomplish the purpose for which the corporate franchise was granted; and contends, therefore, that the finding in the present case that there was a taking "of an easement for steam railroad purpose" was limited to that purpose. The master, in connection with the finding that the defendant's predecessor operated a narrow gauge steam railway, referred to Gen. Sts. c. 63, §§ 17, 18. This statute

dealt with the rights of steam railroad corporations. In considering the question whether the defendant was using the right of way for a purpose not warranted by the franchise of the condemnor, and for that reason entitling the plaintiff to an injunction within the case of *Agostini* v. *North Adams Gas Light Co. supra,* it is important to consider the charter of the Worcester and Shrewsbury Railroad Company. This company was formed under St. 1872, c. 53. By this act it had 'all the powers and privileges set forth in all general laws relating to railroad corporations except as therein otherwise provided. By Gen. Sts. c. 63, § 119, it was provided that "No locomotive engine or other motive power shall be allowed to run upon a railroad constructed by authority of this state, except such as is owned and controlled by the corporation owning and managing the road, unless with the consent of the corporation." A right to use other motive power is clearly implied. It is allowable to infer that the provision includes the power to adopt modern inventions as a source of motive power. An Act of Parliament, passed in 1792, granting a right to build and maintain a railway was held to include the right to maintain a railway for steam locomotives, although it was argued by counsel that such engines were not known at the time of the passage of the act. *Bishop* v. *North,* 11 M. & W. 418. Where the statute under which a railroad corporation received its charter provided that "the said company . . . [should] have the exclusive control of the motive power" it was held that the company had the right to adopt electricity as a motive power even though the use of electricity as a motive power was not known at the time of the passage of the act. *Howley* v. *Central Valley Railroad,* 213 Penn. St. 36, 41. In that case the court stated that in the absence of limitation it was the duty of the company to ask what motive power in the light of its experience was the best for the operation of its road. A turnpike company desiring to operate a horse railroad received authority under N. Y. Laws 1862, c. 233, to operate its road by "any mechanical or other power" it might choose. It was held that the company might adopt electricity as its motive power. *Hudson River Telephone Co.*

*v. Watervliet Turnpike & Railway*, 135 N. Y. 393. In that case the court stated at page 403: "The act of 1862 cannot properly be limited to such methods of operating street surface railways in cities as had then been invented and were then in actual use. The words of the statute are to be interpreted according to their natural and obvious meaning, and, as the terms employed are not ambiguous, extrinsic facts are not available to restrict the authority which it plainly confers. The language, literally construed, includes undiscovered, as well as existing modes of operation." See also 2 L. R. A. (N. S.) 138.

The fact that the Legislature gave specific permission to railroad corporations to operate motor buses (St. 1925, c. 125, § 1) does not necessarily affect the question here presented. Although originally railroad vehicles were confined to one fixed path of travel, the ability of motor buses to traverse any suitable part of a street or location does not necessarily indicate a departure from the purposes of a railroad franchise. Even though the statutory charters refer in terms to railroads which of necessity confine the vehicle to one definite course, the essential purpose was to establish companies which would in a convenient manner transport members of the public.

It was held in the following cases that the action of city councils in permitting street railway companies to substitute motor buses for electric trolley cars does not constitute the grant of a new franchise. *Russell* v. *Kentucky Utilities Co.* 231 Ky. 820. *Carolina Power & Light Co.* v. *Iseley*, 203 N. C. 811, 824. It cannot be said that the defendant is using the right of way for a purpose inconsistent with the exercise of its corporate franchise within the rule stated in *Agostini* v. *North Adams Gas Light Co.* 265 Mass. 70, 73. The exercise of a right additional to, but not differing in kind from, the rights originally granted does not invade unlawfully the plaintiff's property rights. In *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152, 167, 168, Chief Justice Shaw stated: ". . . a principle which has been decided in this commonwealth, and is now well settled, that where, under the authority of the legislature, in virtue of the

sovereign power of eminent domain, private property has been taken for a public use, and a full compensation for a perpetual easement in land has been paid to the owner therefor, and afterwards the land is appropriated to a public use of a like kind, as where a turnpike has by law been converted into a common highway, no new claim for compensation can be sustained by the owner of the land over which it passes." It is clear that the defendant's predecessor acquired a perpetual easement over the land in question. *Boston & Maine Railroad* v. *Hunt,* 210 Mass. 128, 131. *Agostini* v. *North Adams Gas Light Co.* 265 Mass. 70, 73.

It is equally clear that full compensation was paid the plaintiff's predecessor in title for the burden represented by the modern vehicle known as a motor bus. As against an abutter owning the fee to the center of the highway, the operation of a horse freight railroad imposes no additional burden to the easement of travel. *White* v. *Blanchard Brothers Granite Co.* 178 Mass. 363. The same is true with respect to the operation of an electric street railway. "It is obvious that the use made of a public way in the operation of an electric railway is of the same general kind as that for which the way was originally laid out, viz. the transportation of persons and things from place to place along the way." *Howe* v. *West End Street Railway,* 167 Mass. 46, 49. Although the street railway company must share its easement of travel with the public, and a railroad company's possession is exclusive for its purposes, yet the cases last cited necessarily passed on the effect of the additional and new use on the abutter's remaining land. That alone is the question here for determination, and therefore those decisions are pertinent. Where possession of the easement is exclusive, and the charter right is not lacking, a different use seems to be material only as it affects the abutting owner of the fee in respect to his remaining land. It does not appear from the cases decided by this court that any claim has been made that the operation of vehicles powered by internal combustion engines constituted an addition to the easement of public street travel. In *Hyde* v. *Boston & Worcester Street Railway,* 194 Mass. 80, 87, 88,

reference is made to the rule that "In estimating the damages for the taking of the land, the value of the easement which holds it for a public use for the purpose of a street forever is to be included," and the opinion decides that no "provision of the Constitution has been violated by any reasonable use for highway purposes of land so appropriated, which the advance of civilization may render proper." It also was held by this court in *Saltonstall* v. *New York Central Railroad*, 237 Mass. 391, 396, 397, that all legal damages, whether immediate or remote, present or future, arising from the location of the railroad are paid for at the beginning, and that whatever changes thereafter may be wrought upon the railroad location in the natural development of the railroad art constitute no new cause of action unless authorized by some new statute. See also *Wyman* v. *Boston*, 282 Mass. 204, where a railroad location was taken over by an electric railway system. When it is considered that the defendant's predecessor obtained a special kind of highway devoted to a special kind of public travel, the predecessor obtained the right to use on its location for transportation purposes vehicles powered in any way developed by modern invention.

When there is a taking by eminent domain such rights as are reasonably necessary to accomplish the purpose for which the taking is made are acquired unless the Legislature authorizes the acquirement of greater rights. *Agostini* v. *North Adams Gas Light Co.* 265 Mass. 70, 73. The purpose of the original taking by the railroad company of one easement was for a steam railroad. The use of the right of way by the railroad company, as found by the master, was solely devoted to the transportation of the public whether by steam, electricity or vehicles propelled by other power. The master further found that so far as the issue was one of fact the operation of motor buses over the way is not in violation of the easement rights acquired by the defendant's predecessor in title. It cannot be said as matter of law that a right to use other motive power is prohibited. That the grant of the easement included the right to adopt modern inventions including electricity as a source of motive power

is plainly implied. The Worcester and Shrewsbury Railroad Company which was formed under St. 1872, c. 53, was operated by steam, but the master found that long prior to the present proceedings the operation by steam was discontinued and over the right of way a double track, electric trolley line was laid and operated, and service has since been maintained, first by the receivers of the Worcester Consolidated Street Railway Company and finally by the Worcester Street Railway Company. Since 1932 the defendant has operated motor buses over the right of way. It does not appear that during all these years since the abandonment of steam as a motive power, and the adoption of electricity for power, and the substitution of buses for street cars, any question has been raised by the plaintiff respecting the change from the use of steam to electricity as the motive power or the substitution of buses in place of street cars until the bringing of this bill. The present method of operation by buses in connection with street cars for the convenience of the travelling public is not shown to have caused any impairment of the plaintiff's legal rights. We are of opinion that upon the findings of the master and the applicable principles of law the plaintiff fails to show any ground for equitable relief.

It follows that a final decree is to be entered dismissing the bill with costs.

*Ordered accordingly.*