In re Kathryn Suzanne **WIBLE** and **Kenneth Arnold Wible, II, Debtors.**

**HILLBILLY RANCH, INC., Plaintiff,**

v.

**Herbert C. KAHN, ESQ., Trustee for Kathryn Suzanne Wible and Kenneth Arnold Wible, II, Defendants.**

**Bankruptcy No. 83–01183–L.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 28, 1984.

Kenneth H. Soble, Chestnut Hill, Mass., for plaintiff.

Herbert C. Kahn, Boston, Mass., trustee for debtors-defendants.

## MEMORANDUM DECISION

THOMAS W. LAWLESS, Chief Judge.

This matter is before the Court on the motion for relief from stay filed by the Hillbilly Ranch, Inc., ("Hillbilly Ranch") seeking a determination that the seven-day all alcoholic beverage cafe and common victualler's license ("liquor license") owned by Kathryn and Kenneth Wible ("the Debtors") is Hillbilly Ranch's collateral or, in the alternative, relief from stay so that the Hillbilly Ranch can litigate in state court the validity of its asserted security interest in the liquor license. The underlying issue in this action is what effect the undisputed failure of the Marlboro Licensing Board and the Alcoholic Beverage Control Commission ("A.B.C.C.") to approve the Debtors' pledge of the liquor license has on the validity of the pledge in this bankruptcy proceeding.

The parties have submitted an Agreed Statement of Facts and the Court has held a hearing to determine whether the Agreed Statement is adequate for the purpose of rendering a decision. At that hearing, counsel for the Hillbilly Ranch expressed his opinion that the Agreed Statement was inadequate because opposing counsel would not agree to Hillbilly Ranch's assertion that it had filed with the Marlboro Licensing Board all documents necessary to obtain approval of the pledge. In light of this dispute, the Court will assume for the purpose of today's decision that Hillbilly Ranch filed all of the documents necessary to obtain approval of the pledge.[1] With this assumption made, I find the following facts from the Agreed Statement of Facts submitted by the parties.

On or about April 23, 1980, the Hillbilly Ranch, which was originally the holder of the liquor license, entered into a written agreement with the Debtors whereby the Hillbilly Ranch sold, among other assets, the liquor license to the Debtors. In connection with this sale, the Hillbilly Ranch and the Debtors filed documents with the Marlboro Licensing Board requesting approval of the transfer of the liquor license from the Hillbilly Ranch to the Debtors (the "license transfer"). On June 9, 1980, the license transfer was approved by the Marlboro Licensing Board and was thereafter affirmed by the A.B.C.C. On July 16, 1980, the Debtors executed a document entitled "Security Agreement" wherein the Debtors pledged the liquor license to the Hillbilly Ranch to secure the indebtedness from the Debtors to Hillbilly Ranch pursuant to the sale. On July 18, 1980, a U.C.C. Financing Statement was filed with the City Clerk of Marlboro and on July 29, 1980, a U.C.C. Financing Statement was filed with the Secretary of State for the Commonwealth of Massachusetts covering the liquor license. It is assumed that the Hillbilly Ranch also filed all documents necessary to obtain the approval of the pledge of the liquor license with the Marlboro Licensing Board; however, neither Marlboro or the A.B.C.C. ever approved the pledge.

The Debtors having defaulted on the underlying note, the Hillbilly Ranch filed a petition with the Marlboro Licensing Board on June 22, 1983, seeking to have the Board notify the Debtors to surrender the

---

1. Of course, any dispute between the Hillbilly Ranch and the local and A.B.C.C. licensing boards is not the subject of this decision as it is beyond this Court's jurisdiction.

license and reissue the license to the Hillbilly Ranch. Marlboro Licensing Board held hearings on Hillbilly Ranch's petition but no action had been taken on it at the time of the Debtors' Chapter 7 filing on August 19, 1983.

The issue before the Court is whether the license is validly pledged where Marlboro and the A.B.C.C. did not approve the pledge at the time of the bankruptcy filing.

Massachusetts law provides that transfers of liquor licenses must be approved by both the local licensing board and the A.B.C.C. M.G.L. c. 138 § 23. This statute was amended in part in 1976 (effective January 1977) to provide that:

Any license granted under the provisions of this chapter may be pledged by the licensee for a loan, provided approval of such loan and pledge is given by the local licensing authority and the commission (the Alcoholic Beverage Control Commission).

This 1976 amendment to chapter 138 § 23 —providing statutory authorization to pledge a liquor license to secure a loan— created an exception to the general policy in Massachusetts that a licensee does not have a property right in the document or paper evidencing the granting of a license. *Opinion of the Attorney General*, Nov. 8, 1978. p. 128; *Opinion of the House of Representatives*, 368 Mass. 857, 333 N.E.2d 414 (1975).

This Court had occasion to consider the amended statute in a factual situation virtually identical to that presented in the case at bar in *In re Marvalle Corporation*, No. 77–2639–L, slip op. (D.Mass. May 30, 1979). In that case, the alleged secured creditor of the liquor license had perfected his security interest in accordance with Article 9 of the Uniform Commercial Code, M.G.L. c. 106 § 9–101 et seq., the *license transfer* (as opposed to the *license pledge*) had been approved by the local licensing board and the A.B.C.C., and the evidence was unclear as to whether all documents pertaining to the pledge had been submitted by the parties to the licensing boards. In *Marvalle* I held that, assuming all the appropriate pledge documents had been filed, the licensing boards' approval of the license transfer could not be construed as approval of the license pledge within the meaning of M.G.L. c. 138 § 23. The basis of the *Marvalle* decision follows:

If, as counsel for the plaintiff [the pledgee] argues, the 1976 amendment to § 23 codifies a formerly existing right to pledge a liquor license and requires approval by the A.B.C.C. solely to precipitate disclosure of the pledge to it, the amendment adds nothing since disclosure was required previously by way of the beneficial interest form. A more likely interpretation of the amendment is that it creates a limited exception to the general policy that a licensee has no property right in the document of paper evidencing a liquor license granted him, and that the required approval embraces more than that potentially implied by approval of the transfer with disclosure of the pledge. The approval mandated by § 23 refers specifically to the pledge and not to the transfer with disclosure of the pledge. It is more than a ministerial act (the omission of which might not be fatal) since discretion exists to approve or disapprove the pledge.

A reasonable interpretation of the statute is that it envisages some minimum showing of the exercise of the discretion conferred; that is, a manifestation of consideration given the issue of the pledge by way of an express statement, no matter how succinct, of approval or disapproval. Where, as here, approval of the pledge can at best be implied by a failure to disapprove, there is no discernable compliance with the statute. Had the legislature intended to create a presumption in favor of approval, it could have so drafted the statute. For example, the statute might have read "Any license granted under the provisions of this chapter may be pledged by the licensee for a loan, absent disapproval upon disclosure of such loan and pledge by either the local licensing authority or the

commission." *See, Leroy v. Worcester State Railway Co.,* 287 Mass. 1, 7–9, 191 N.E. 39 (1934). In the context of the statute as written, however, "[a]pproval implies favorable conviction manifested by affirmation concerning a specific matter submitted for decision. It signifies the application of sound judgment to a proposition emanating from another source and submitted for investigation. It requires the exercise of faculties of criticism and discrimination. It denotes positive sanction. It does not mean original and inventive construction in the first instance. On the other hand it is not a mere perfunctory act. It imposes no mean responsibility. It carries power and duty of an effective nature." *Simpson v. Marlborough,* 236 Mass. 210, 214, 127 N.E. 887, 888 (1920).

Plaintiff also argues that by complying with the provisions of Article 9 of the Uniform Commercial Code its security interest in the liquor license was perfected regardless of the requirements of M.G.L.A. c. 138 § 23. Again, this argument would render the statute meaningless. Interpreting the 1976 amendment as a exception to the general policy that a licensee has no property rights in the license, it is only by virtue of the amended statute that Marvalle's interest in the collateral was capable of being validly pledged. Even if that capability did exist previously, a condition of approval was imposed by the amended statute and must be satisfied in addition to the requirements of U.C.C. Article 9....

It would seem to be incumbent upon the pledgee, however, and in his own best interest, to solicit and obtain a statement of approval from the state and local authorities when one is not forthcoming. Any reliance upon an undisclosed, supposed approval of the pledge is, at best, misplaced. *Marvalle, supra,* at 4–5.

I find the reasoning of *Marvalle* persuasive and applicable to the instant case. Indeed, *Marvalle* presented a more difficult decision than the present case because the pledge in *Marvalle* was one of the first, if not the first, under the amended statute

and no official means of implementing it had yet been established. At the time the Hillbilly Ranch attempted to obtain a valid pledge of the liquor license, the amended chapter 138 § 23 had been in effect three and a half years. I find that Hillbilly Ranch's alleged security interest in the liquor license is invalid for failure to comply with the provision of M.G.L. c. 138 § 23, as amended in 1976.

It is so Ordered.