GOODYEAR PARK CO. *vs.* CITY OF HOLYOKE.

Hampden.    September 21, 1933. — May 6, 1935.

Present: RUGG, C.J., PIERCE, FIELD, & DONAHUE, JJ.

*Contract,* What constitutes, In writing.  *Holyoke.  Municipal Corporations,* Contracts.  *Custom.*

The requirement of a statute providing that certain contracts of a municipality be "in writing" is not met by a mere memorandum; the contract itself, including all its essential terms, must be in writing.

Where a landowner wrote a letter to a municipal board offering to sell his land to the municipality for a certain price, and later orally reduced the price at the request of the board, and thereafter the board voted to purchase the land for the smaller amount, the vote being duly recorded in its records, a contract "in writing" was not made between the landowner and the municipality, because the vote did not conform to the letter with respect to the amount of the purchase price.

It *was stated* that a contract "in writing" between a landowner and a municipality for the purchase of the land by it was not made by a vote of a municipal board to purchase the land, considered as an offer, followed by a tender by the landowner of a deed containing material terms not contained in the vote, nor by such tender, considered as an offer, in conjunction with a subsequent vote of the board to purchase the property and accept the deed tendered provided that the title to the land be examined and found clear.

There was not compliance with a statute providing that certain contracts of a city should be in writing and that they should not be effective until "the approval of the mayor is affixed thereto," where nothing showing the mayor's approval of the particular contract in question appeared on any of the instruments forming part thereof, even though the mayor approved the general purpose for which the contract was made, signed a recommendation to the board of aldermen for a bond issue for such purpose and approved in writing an order by the board for the bond issue.

A statute providing that certain contracts of a city should be in writing and that they should not be effective until approved by the mayor in writing was applicable to a contract of one of the city boards for the purchase of land notwithstanding the custom of that board for many years to acquire land "by purchase, without securing written approval of the mayor to each purchase."

BILL IN EQUITY, filed in the Superior Court on July 5, 1932.

The suit was referred to a master. Material findings by him are stated in the opinion. By order of *Dillon*, J., there were entered an interlocutory decree confirming the master's report and a final decree in the plaintiff's favor. The defendant appealed from the final decree.

*J. F. Hartnett & R. L. Davenport*, for the defendant.

*N. P. Avery*, (*H. J. Lacey* with him,) for the plaintiff.

FIELD, J. This is a suit in equity brought against the city of Holyoke to compel specific performance of a contract to purchase land from the plaintiff. The case was referred to a master who filed a report which was confirmed by an interlocutory decree. Thereafter there was a final decree for the plaintiff from which the defendant appealed. The evidence before the master is not reported.

The bill cannot be maintained on the facts found by the master, since no valid contract of purchase is shown.

St. 1872, c. 62, established for the defendant a board of water commissioners, which ever since, under that statute and later statutes, has been in control of the defendant's water supply system. See *Pearsons* v. *Ranlett*, 110 Mass. 118. The plaintiff owns a tract of land near the Ashley Ponds reservoir which is a part of this system. Following negotiations between the plaintiff and the chairman of the board of water commissioners, the plaintiff, on October 2, 1930, sent a letter to the board quoting prices on tracts of land of different areas, one of which was the tract of land in question. The price quoted in the letter for this tract was $28,000. The board, however, authorized its chairman to endeavor to get the price reduced to $25,000. On October 8, 1930, he reported to the board that the land was offered for that sum. The following vote was then

passed and duly recorded in the records of the board: "Voted to appropriate money to purchase land from the Goodyear Park Company, Incorporated. Voted to purchase land from the Goodyear Park Company, Incorporated, at the price of $25,000.00." Thereafter the "title was examined and found all right" by the city solicitor, "who, after a proper deed had been delivered to him, by the plaintiff, left it with the water department in the custody of . . . [the] registrar and secretary of the department." This deed was never returned to the plaintiff. At a meeting of the board on May 8, 1931, the plaintiff "again tendered a deed properly executed which was left with the Board." On April 27, 1932, the following vote was passed by the board: "Voted that the votes of the Board of Water Commissioners passed on Oct. 8, 1930 be and hereby are ratified and confirmed and the Board of Water Commissioners further now votes to purchase the said land with reference to which the votes were passed at a price of $25,000.00 and appropriates the sum of $25,000.00 to be paid for the purchase of said land and accepts the deed of the Goodyear Park Co., Inc., as tendered provided however that the title to said land shall be examined and found to be free of incumbrances and authorizes and directs the chairman for and on behalf of the City of Holyoke to sign any agreements or instruments in writing and to do all other acts necessary or incidental for accomplishing the purpose of this vote." The deed of the land was then in the possession of the board. No question is raised as to its execution or validity or the ability of the plaintiff to convey a title free and clear of all encumbrances. Payment of the purchase price has never been made, and the treasurer of the board (see St. 1878, c. 220, § 1) at all times has refused to sign a check for the purchase price of the land.

St. 1908, c. 359, relating to the board of water commissioners of the city of Holyoke, provides in § 3 that "All contracts made by the board, when the amount involved is five hundred dollars or more, shall be in writing and no such contract shall be deemed to have been made or executed until the approval of the mayor is affixed thereto."

No contract for the purchase of the land was made unless by the board of water commissioners. The amount involved is more than $500. If, therefore, the provisions of St. 1908, c. 359, § 3, were not complied with there was no valid contract of purchase (*Bay State Street Railway* v. *Woburn*, 232 Mass. 201, *Conners* v. *Lowell*, 246 Mass. 279) and it is not necessary to consider whether proof of a contract fails on any other ground.

The provisions of the statute have not been complied with. Its requirements are not met by a mere memorandum, but the contract itself, including all its essential terms, must be in writing. In this respect the statute resembles the statute requiring an agreement to make a will to be in writing. G. L. (Ter. Ed.) c. 259, § 5. *Read* v. *McKeague*, 252 Mass. 162, 164, and cases cited. Here there was no single written instrument constituting the contract. The plaintiff, however, contends that its letter of October 2, 1930, treated as an offer and the vote (or votes) treated as an acceptance together constituted a contract in writing. But this contention fails, for the terms of the vote (or votes) do not conform to the terms of the letter in the material particular of the amount of the purchase price. On the facts found the amount of the purchase price as stated in the letter was later reduced to the amount stated in the votes. But this change, so far as appears, was not made by a written instrument. Whether, if the terms of the letter and of the vote (or votes) had been identical in all material particulars, a contract in writing would have resulted, need not be decided. Compare *Green* v. *Everett*, 179 Mass. 147, 151. Moreover, the vote (or votes) standing alone obviously did not constitute a contract. And the plaintiff rightly does not argue that the vote of the board of October 8, 1930, was an offer accepted by tender of the deed, or that the tender of the deed was an offer accepted by the board by its vote of April 27, 1932. The earlier vote considered as an offer did not expressly or impliedly contain the material terms of the deed later tendered. And the later vote was not an unqualified acceptance of the deed previously tendered.

But even if, on any interpretation of the written instruments, there was a contract in writing, the "approval of the mayor" was not "affixed thereto." The mayor's approval must be his direct affirmative sanction of the specific contract relied on. *McLean* v. *Mayor of Holyoke*, 216 Mass. 62. *Leroy* v. *Worcester Street Railway*, 287 Mass. 1, 6–9. And such approval must be "affixed" to the written instrument or instruments embodying the contract. The case of *Clarke* v. *Fall River*, 219 Mass. 580, indicates that substantial compliance with the statutory requirements is sufficient. But there must be substantial compliance. In that case there was in substance an approval by the mayor affixed to the written contract, though the word "approval" was not used. The mayor clearly indicated his approval of the contract by executing it in behalf of the city. See also *Eastern Advertising Co.* v. *E. L. Patch Co.* 235 Mass. 580, 581–582. In the present case no words showing expressly or by fair implication the mayor's approval of the specific contract appear on any instrument which on any theory could be regarded as constituting a part of a written contract.

The plaintiff, however, relies upon the mayor's action in connection with a bond issue to raise money for the purchase of the land in question as constituting the requisite approval of the specific contract of purchase. These facts were found by the master: The chairman of the water board made a request of the mayor that "an issue of bonds be authorized to purchase the land and to construct a pipeline." He explained to the mayor that "$25,000 was needed to purchase land" of the plaintiff. On October 31, 1930, the mayor recommended to the board of aldermen a loan of $100,000 "for the establishing or purchasing of a system for supplying the inhabitants of a city or town with water, for the purchase of land for the protection of a water system to take effect December 1, 1930." The mayor explained to the president of the board of aldermen the purpose of the bond issue. The president of that board introduced an order for such bond issue and "explained to the aldermen that $25,000 was for the purchase of the land"

from the plaintiff. The recommendation was adopted by the board of aldermen on October 31, 1930. The next day the order was approved by the mayor. "In recommending the loan and the passage of the order and in approving the order after its passage . . . [the mayor] twice affixed his signature thereto and a certified copy of the order showing such approval was sent to the water commissioners by the city clerk and was incorporated in their official records." After the passage of the loan order "funds were obtained from the sale of bonds in December and the sum of $25,000 was allowed to pay for the land in accordance with the vote of October 8." These facts tend to show the mayor's approval of the general purpose of the board of water commissioners in purchasing land from the plaintiff for $25,000. But they do not show his direct affirmative sanction of a specific contract for the purchase of such land in all its essential details. Furthermore, affixing the approval of the mayor to a written contract is a part of the execution thereof. *United States Drainage & Irrigation Co.* v. *Medford,* 225 Mass. 467, 472. Unless, at least, the mayor's approval was affixed in some form to some instrument which was a part of a written contract no written contract was executed so as to bind the defendant. Neither the signature of the mayor to his recommendation of a loan nor his signature, by way of approval, to an order of the board of aldermen for a bond issue was included in the execution of a written contract, however important such steps may have been in carrying out the proposed transaction.

The plaintiff is not aided by the finding of the master that, according to the usual course of business of the board of water commissioners, "except in cases where questions of title or disagreements in price were present the board in acquiring land for over twenty years has done so by purchase, without securing written approval of the mayor to each purchase." Such usage or custom, however long continued, did not destroy the force of St. 1908, c. 359, § 3, as applied to the transaction involved in this case. See *Butler* v. *Charlestown,* 7 Gray, 12. *Franklin Savings Bank* v. *Framingham,* 212 Mass. 92, 95.

It follows that the final decree must be reversed and a decree entered with costs dismissing the bill.

*Ordered accordingly.*