EASTERN MASSACHUSETTS STREET RAILWAY COMPANY *vs.*
MAYOR OF FALL RIVER.

Bristol.   December 4, 1940. — January 29, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*School and School Committee. Municipal Corporations,* Contracts, Officers
and agents.   *Mandamus.*

The school committee in a city having one of the standard forms of charter
set forth in G. L. (Ter. Ed.) c. 43 is a "department" or a "board"
within the meaning of § 29, in the form appearing in § 10 of St. 1938,
c. 378.

By reason of § 29 of G. L. (Ter. Ed.) c. 43 in the form appearing in St.
1938, c. 378, § 10, a contract for the furnishing of transportation of
school children, negotiated and awarded, under G. L. (Ter. Ed.)
c. 40, § 4, as amended by St. 1932, c. 271, § 6, by the school committee
of a city having a Plan A form of charter, cannot become binding on
the city without approval by the mayor; and such approval is not a
mere perfunctory matter but requires the exercise of independent
judgment.

Mandamus did not lie to compel the mayor of a city to approve a city
contract which could not become valid without his approval and
which in the exercise of his independent judgment, in good faith and
for a reason neither arbitrary nor capricious, he had refused to approve.

PETITION, filed in the Superior Court on September 3,
1940, for a writ of mandamus.

The case was heard by *Greenhalge,* J., who ordered the
issuance of the writ.   The respondent alleged exceptions.

*G. L. Sisson,* Corporation Counsel, for the respondent.

*A. E. Seagrave,* (*A. E. Beaulieu* with him,) for the peti-
tioner.

QUA, J.   This petition is brought to compel the mayor
of Fall River to approve a contract involving more than
$500 for the furnishing of transportation of school children
for a period of three years.   The school committee awarded
the contract to the petitioner, which was not the lowest
bidder, but when the contract was submitted to the mayor
for his approval he notified the committee in writing of his
refusal to approve, stating, "I see no reason for not award-

ing this contract to the lowest bidder whereby a saving to the city of $3,000.00 could be effected." Thereafter the school committee voted to "reaffirm its action" and to award the contract to the petitioner. The mayor still refuses to approve.

Chapter 40 of the Tercentenary Edition of the General Laws, entitled "Powers and Duties of Cities and Towns," contains in § 4 (as amended by St. 1932, c. 271, § 6), headed "Power to contract," this provision among others: "A town [includes a city, § 1] may make contracts for the exercise of its corporate powers and for the following purposes: . . . For the furnishing of transportation of school children. Contracts for such transportation may be made by the school committee for periods not exceeding three years; . . . [then follows a proviso not here involved]." Chapter 43, entitled "City Charters," in § 29, as amended by St. 1938, c. 378, § 10, provides: "All contracts made by any department, board or commission where the amount involved is five hundred dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor under Plan A, B, C or D, or of the city manager under Plan E, and also of the officer or of the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto." Fall River has a "Plan A" charter under c. 43. Section 29 therefore applies to Fall River (see G. L. [Ter. Ed.] c. 43, § 45) and supersedes "general and special laws relating thereto and inconsistent" with that section, c. 43, § 11. See *Gilliatt* v. *Quincy,* 292 Mass. 222, 223, 224. The mayor is a member of the school committee and is chairman of the committee. § 31. He is also "the chief executive officer of the city." § 48.

The school committee in a city having one of the standard forms of charter set forth in c. 43 is a "department" or a "board" within the meaning of c. 43, § 29, so that under that section a contract of the kind here involved which has been negotiated and adopted by the committee cannot "be deemed to have been made or executed until

the approval of the mayor . . . is affixed thereto." School committees are not bodies separate and distinct from the city governments provided for in c. 43. They are parts of those governments and are within the purview of c. 43. Chapter 43 itself, in §§ 31 to 36 inclusive, makes provision for the election, organization and powers of school committees in cities adopting any one of the standard charters. Section 33 provides that "Except as otherwise provided in this chapter . . . the school committee, in addition to the powers and duties conferred and imposed by law on school committees" (see G. L. [Ter. Ed.] c. 71, §§ 35 *et seq.*) may exercise certain specified additional powers. In §§ 52 and 54, relating to Plan A charters, the school committee is classed with departments and boards. See further *School Committee of Cambridge* v. *Mayor & City Council of Cambridge*, 233 Mass. 6; *Trustees of Public Library of Boston* v. *Rector of Trinity Church*, 263 Mass. 173, 179. Section 29 requiring the mayor's approval refers to "any department, board or commission" of the city, without exception. The petitioner, by bringing this petition, in effect concedes, in so far as it can concede, that the contract in question requires the approval of the mayor.

But the petitioner argues that by c. 40, § 4, hereinbefore first quoted, the power to make contracts for the furnishing of transportation of school children is so fully and unreservedly entrusted to the school committee that when the committee has negotiated a contract it is the absolute duty of the mayor to approve it, or at least that he has no power to withhold his approval on the only ground here stated by him, to wit: that the contract was not awarded to the lowest bidder. It is urged upon us that the broad powers of school committees and their historic position in the municipal governments of the Commonwealth as independent bodies in control of public education (see G. L. [Ter. Ed.] c. 71, § 37; *Leonard* v. *School Committee of Springfield*, 241 Mass. 325; *Decatur* v. *Auditor of Peabody*, 251 Mass. 82; *Russell* v. *Gannon*, 281 Mass. 398) preclude any construction of c. 43, § 29, which would leave the mayor free to exercise any judgment or discretion of his own and so

would give to him something like a veto power over contracts made by the committee. We are not convinced that in respect to the contract here involved this argument should prevail against the natural meaning of the words of § 29 as amended. Those words are: "no such contract shall be deemed to have been made or executed until the approval of the mayor . . . and also of the officer or of the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto." This is scarcely the form of expression which would have been used if the intent had been to limit the mayor to the merely formal duty of signing his name to whatever might be placed before him. Although the initiative in the making of contracts in the sense of taking the necessary preliminary steps to define their terms is left to the department, board, or commission within whose jurisdiction the subject matter falls, the mayor as the chief executive officer of the city, and as therefore in a position to understand its needs as a whole, was entrusted with the general duty of examining and passing upon the advisability of entering into contracts proposed, not only by school committees, but by all the departments, boards and commissions of the city. *Rollins* v. *Salem,* 251 Mass. 468, 471. No doubt it was expected that the mayor would give weight to the judgment of the officers and boards dealing with a subject in the first instance, but it was also intended that he should apply to the problem his own best judgment from his different viewpoint. No limitation is expressed as to the nature of the elements which the mayor may take into consideration in deciding whether or not to affix his approval, nor does any sound distinction occur to us by which he can be debarred from consideration of any reasonable grounds or arguments entertained in good faith and not in themselves merely arbitrary or capricious. In this case good faith of the mayor "is not in issue," and the reason given by him — the saving of money by awarding the contract to the lowest bidder — does not appear to have been unreasonable, arbitrary or capricious.

In *McLean* v. *Mayor of Holyoke,* 216 Mass. 62, where

there was a charter provision that no contract like that there involved should be deemed to have been made or executed until the approval of the mayor should be affixed thereto, it was held that the mayor could not be compelled to affix his approval to a contract for school furniture made by the school committee which the mayor had disapproved on the ground that an expenditure of the kind and size ought not to come out of an appropriation for ordinary expenses.   This case was followed in *Parkhurst* v. *Revere,* 263 Mass. 364, 371, where the school committee had ordered textbooks.   See also *Remington Typewriter Co.* v. *Revere,* 285 Mass. 1, 3.   A similar construction has been given to other statutory provisions whereby approval has been required by a mayor or other officer of contracts negotiated by others.   *United States Drainage & Irrigation Co.* v. *Medford,* 225 Mass. 467, 472.   *Simpson* v. *Marlborough,* 236 Mass. 210, 214.   *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 420.   *Leroy* v. *Worcester Street Railway,* 287 Mass. 1, 7, 8.   *Goodyear Park Co.* v. *Holyoke,* 291 Mass. 11, 13, 15.   See *Brown* v. *Newburyport,* 209 Mass. 259, 265, 266; *Fiske* v. *Worcester,* 219 Mass. 428; *Rooney, petitioner,* 298 Mass. 430, 433.

This decision as to the duty of the mayor under G. L. (Ter. Ed.) c. 43, § 29, does not in fact encroach upon or derogate from the time honored authority of school committees over public education.   The furnishing of transportation of school children seems first to have found recognition in St. 1869, c. 132, which provided that towns might raise and appropriate money for that purpose, to be expended by the school committee in their discretion.   This and related provisions have apparently approached the subject from the standpoint of conferring additional corporate powers upon municipalities as such rather than with reference to the peculiar powers of school committees.   In general, they have been codified in the chapters relating to municipal powers and not in those relating to the powers of school committees.   See Pub. Sts. c. 27, § 10; St. 1894, c. 436, § 4; St. 1898, c. 496, § 3; St. 1913, c. 396; G. L. (Ter. Ed.) c. 40, § 5 (2).   Compare, however, G. L. (Ter. Ed.) c. 71, §§ 6, 7

(high schools only). St. 1919, c. 292, § 9 (see now G. L. [Ter. Ed.] c. 71, § 68) provided by an amendment to the school laws that if the school committee declined to furnish transportation in certain instances the board of education might require the "town" to do so. When express authority to make contracts for a period of years was first conferred upon school committees by St. 1926, c. 67, the new act was not incorporated into G. L. (Ter. Ed.) c. 71, which is the principal statute dealing with public schools and the powers of school committees. Instead it was inserted in c. 40, relating to the general powers and duties of cities and towns, as an addition to § 4, which already contained specific provisions couched in similar form to the effect that boards of health might make contracts for the disposal of garbage; and that overseers of the poor or boards of health might make contracts for the hospitalization of needy persons. The function of making term contracts for transportation, when expressly assigned to school committees, was thus intimately associated in the statutes with the functions of other boards which have never enjoyed the peculiar status enjoyed by school committees in their own special field. Contracting for the furnishing of transportation of school children bears only a secondary relation to education. It is a matter which could have been committed to some other board or officer without destroying the symmetry of the established system of school government. At most the mayor's approval under G. L. (Ter. Ed.) c. 43, § 29, is required only for the making of contracts, and then only when they involve more than a certain amount. In general, these are mere business transactions. They do not as a rule directly relate to methods of education or to the policy, conduct, regulation and discipline of the schools. Ordinary commercial contracts have never hitherto been held to belong in the field in which by long established policy and tradition school committees have exercised exclusive and untrammeled control. On the contrary, contracts for the purchase of supplies, which are analogous to the contract here involved, were held in the *Holyoke* and *Revere* cases to require actual approval by the mayor.

This decision is confined to the issue presented in this case. We do not decide, for example, that the employment of a teacher (see *Callahan* v. *Woburn*, 306 Mass. 265, 269, even though it might carry a salary of over $500, would require the approval of the mayor under G. L. (Ter. Ed.) c. 43, § 29. See G. L. (Ter. Ed.) c. 71, § 38; *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 329, 330; *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 87, 88, 89. In the case last cited, in dealing with the effect of the municipal finance law upon school committees, it was said at pages 87, 88, that the single consideration which puts the school committee with respect to salaries of teachers upon a basis different from that of other municipal departments is the provision now found in G. L. (Ter. Ed.) c. 71, § 34, as amended by St. 1939, c. 294, compelling the municipality to provide an amount of money sufficient for the support of the schools as required by c. 71. See *Callahan* v. *Woburn*, 306 Mass. 265, 272. The express grant of authority to school committees to contract for the furnishing of transportation of school children is not in c. 71, but is in § 4 of c. 40.

Nothing in this opinion is inconsistent with *Braconier* v. *Packard*, 136 Mass. 50, or with *Wilson* v. *Brouder*, 291 Mass. 389. The latter case arose in a town. Section 29 does not apply to towns.

Inasmuch as we hold that the contract in question required the approval of the mayor under G. L. (Ter. Ed.) c. 43, § 29, and that his approval was not a merely perfunctory matter but involved the exercise of his own independent judgment, which the court cannot control; and inasmuch as the mayor has refused his approval in good faith for a reason which was neither arbitrary nor capricious, there is no ground on which the court can intervene to compel him to take further action. *McLean* v. *Mayor of Holyoke*, 216 Mass. 62, 64, 65.

*Exceptions sustained.*
*Petition dismissed.*