BRAINTREE BAPTIST TEMPLE, et al.

v.

HOLBROOK PUBLIC SCHOOLS, et al.

Civ. A. No. 83–0580–Z.

United States District Court,
D. Massachusetts.

Sept. 18, 1984.

Richard G. Gay, Colby M. May, May, Dunne & Gay, Washington, D.C., John C. Sandelli, Dracut, Mass., for plaintiff.

Diana S. Gondek, Maria I. Lopez, Ass't Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This case illustrates the admonition articulated in Matthew 22:21.[1] Plaintiffs are two sectarian schools, their teachers, students, the students' parents, the churches operating the schools, and a pastor who heads one of the schools.[2] They challenge the constitutionality of the Massachusetts compulsory education laws as applied to them and seek to enjoin enforcement of the laws against them by defendants, the Massachusetts Board of Education (and its chairman and vice-chairman), the Massachusetts Department of Education, and the Commissioner of Education (referred to collectively as the state defendants); the Holbrook Public Schools, their superintendent, John Moran, and the Holbrook School Committee and its individual members (the Holbrook defendants); the East Longmeadow Public Schools, their superintendent, Wayne Porter, and the East Longmeadow School Committee and its individual members (the East Longmeadow defendants); and the Boston Public Schools, their superintendent, Robert Spillane, the Boston School Committee and its individual members, and Richard Allen, Advisor of Attendance for the Committee (the Boston defendants). Plaintiffs further seek damages and attorneys' fees.

Mass.Gen.Laws ch. 76, § 1 provides in relevant part that "Every child ... shall ... attend a public day school ... or some other day school approved by the school committee [of the child's town of residence].... For the purposes of this section, school committees shall approve a private school when satisfied that the instruction in all the studies required by law equals in thoroughness and efficiency, and in the progress made therein, that in the public schools in the same town; but shall not withhold such approval on account of religious teaching.... The school committee of each town shall provide for and enforce the school attendance of all children actually residing therein in accordance herewith." Mass.Gen.Laws ch. 76, § 2 mandates that "[e]very person in control of a child described in the preceding section shall cause him to attend school as therein required and if he fails so to do for seven day sessions or fourteen half day sessions within any period of six months, he shall, on complaint by a supervisor of attendance, be punished by a fine of not more than twenty dollars."

In their amended complaint, plaintiffs allege that these statutes[3] and defendants' action in accordance therewith violate plaintiffs' rights under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, and under Amendment Article 18, sections 1 and 2 of the Massachusetts Constitution. They also allege that the Commissioner of Education has exceeded the scope of the powers accorded him by Mass.Gen.Laws ch. 69, § 1,[4] and assert an independent claim on

---

1. "Render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's." (King James)

2. The Reverend Bruce Turner, pastor of Braintree Baptist Temple and head of its school, is not listed as a plaintiff in this action, although the complaint in some places refers to "pastors" in the plural.

3. Plaintiffs' complaint also refers to Mass.Gen. Laws ch. 119, § 39E (supervisor of attendance may seek a determination that child who fails to attend school is "in need of services" and subject to court direction of education or living ar-

rangements); and to Mass.Gen.Laws ch. 71, § 1 (prescribing subjects to be taught "to all pupils in all schools under public control"). There is no allegation that any action affecting plaintiffs has been or will be taken by any of the defendants in accordance with these statutes. That being so, plaintiffs lack standing to challenge these two statutes and so much of the complaint as relates to them is dismissed.

4. The section's initial sentence provides that the Commissioner "shall have supervision of all educational work supported in whole or in part by the commonwealth." The remainder sets forth particular powers and duties involved.

the purported basis of 42 U.S.C. § 1983.[5] The case is before me on defendants' motions to dismiss all counts of the complaint.[6]

The following facts, set forth in the amended complaint, are not in dispute. Plaintiff Braintree Baptist Temple is an incorporated church located in Holbrook. (¶ 4). It operates plaintiff Temple Christian Academy. *Id.* Plaintiff New Life Baptist Church is an incorporated church, located in East Longmeadow. (¶ 5). It operates plaintiff New Life Baptist Church Academy. *Id.* The members of the two churches believe that the Bible is the inspired word of God and must serve as a source of guidance for all aspects of life, and as the source of all teaching and knowledge. (¶ 8). They regard the schools as a completely integral part of the churches, for they believe Christian education to be a necessary part and purpose of the churches' existence, (¶ 10) and this religious mission is the only reason for the schools' existence. The schools' primary goal is to assure future adherents their Christian faith (¶ 11(d)) by training children up in the Way they should go.

The schools are operated in facilities owned by the churches, (¶ 10) which are in compliance with applicable health, fire, safety and building codes. (¶ 6). They are not separately incorporated and have no separate governing body or finances from those of the churches. (¶ 10). They receive no direct local, state or federal tax support (¶ 5).

The plaintiff teachers are all "Bible-believing and practicing Christians" (¶ 11(1)) and are dedicated to rearing their students in their faith. (¶ 11(k)). Plaintiff David Chase, pastor of New Life Baptist Church, is also head of its school. (¶ 14). He believes it is part of his duty as pastor to establish this religious school to further the educational mission of the church. (¶ 16).

Plaintiff parents are "born again Christians" who believe they have the duty to give their children an education that inculcates their religious values, "a complete biblical Christian perspective." (¶¶ 19, 25). They believe that all knowledge is inescapably religious, so that it is impossible to separate a secular from a religious aspect of education (¶ 10); and part-time instruction or attendance at a nonsectarian school is insufficient (¶ 21) to attain their educational goals. The parents will continue to send their children to the plaintiff schools. (¶ 25).

Plaintiff students attend the schools pursuant to the direction of their parents and the mandate of their own religious convictions (¶ 25) and will continue to do so.

On July 21, 1981, defendant Moran, the Holbrook school superintendent, wrote to Reverend Bruce Turner, pastor of Braintree Baptist Temple and head of the Temple Christian Academy, informing him that the Academy must provide certain information to the Holbrook School Committee in

5. Plaintiffs have rendered the court's task far more difficult and time consuming than necessary by ignoring the requirement of Fed.R. Civ.P. 8(e)(1) that a complaint's averments be simple, concise and direct. The blunderbuss approach of their 119-paragraph, 37-page complaint "places an unjustified burden on the court and on the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." 5 Wright & Miller *Federal Practice and Procedure* § 1281 at 365 (1969).

6. The state defendants, the Holbrook defendants, and the East Longmeadow defendants have filed separate motions to dismiss; the Boston defendants have filed a motion to dismiss or in the alternative for summary judgment. All

the local defendants have adopted the relevant arguments of the state defendants' brief in support of their own motions to dismiss.

Plaintiffs' brief refers to facts not alleged in the complaint. In deciding the motions to dismiss by the state defendants, the Holbrook defendants, and the East Longmeadow defendants, I exclude from consideration all such matters outside the pleadings and accept as true the factual allegations contained in the complaint.

The Boston defendants have supported their motion with the affidavit of the supervisor of attendance and I treat it as one for summary judgment. The facts alleged in the complaint with respect to those defendants, therefore, cannot be accepted as correct unless uncontroverted.

order to comply with the approval provision of Mass.Gen.Laws ch. 76, § 1. (¶ 67, Exhibit 2). His letter stated that in order for the Academy to open, Reverend Turner must show "provision for proper safety and attendance coverage for all pupils" and for proper transportation "to be reviewed and approved." He requested Reverend Turner to show that the school's teachers were certified and that the length of the school day and year met state requirements. He further asked Reverend Turner to submit the school's curriculum for all grade levels, "to be approved by appropriate Holbrook principals, department heads, and/or supervisors for recommendation to the School Committee," and stated that "various personnel involved, i.e., principals, department heads" would visit to verify the materials submitted; if deemed necessary, the School Committee would visit. He noted that the School Committee would request the town building inspector to visit and approve the building as a school facility.

In October or December 1982, plaintiff parents of children attending Temple Christian Academy and New Life Academy notified the district school committees of the districts in which they reside that their children of compulsory school age were having their educational needs met by attendance at those schools. On December 23, 1982, Richard Allen, Advisor of Attendance for the Boston School Committee, sent a letter to plaintiff Charles Nelson asking

him to contact him "[r]egarding the educational needs of your children Jennifer and James." (Complaint, Exhibit 3).

The complaint alleges that on January 4, 1983, a truant officer employed by the Boston School Committee told Mr. Nelson that he should place his children in an approved school or face prosecution for violation of the state compulsory attendance laws. The Boston defendants dispute this allegation.

The following allegations concerning the East Longmeadow defendants I take, for purposes of the motion to dismiss, as true. On September 9, 1982, Wayne Porter, superintendent of the East Longmeadow schools, wrote to Reverend David Chase, informing him of the private school approval requirement, and asking him to submit materials to the committee "as outlined in the enclosed checklist" within "a couple of weeks." (¶ 71). He noted that the need for approval was urgent to avoid continued violation of the compulsory attendance law by the students and their parents. (Complaint, Exhibit 4). The "checklist" to which Porter referred, enclosed with his letter, was a four-page form entitled, "Checklist for Approval of Private Schools by Local School Committees."[7] It was issued as part of a memorandum, dated August 19, 1982, to School Committee Chairpersons and Superintendents of Schools from the Massachusetts Commissioner of Education, entitled "Guidelines for Approval of Private Schools" (Complaint, Exhibit 1).[8] On

---

7. The list (reproduced in Appendix "A") contains nine categories of factors to be considered, with columns to be checked labelled "met" "partially met" and "unmet" and a space for comments after each criterion.

8. The memorandum states that it is intended to provide guidance to school officials in carrying out their responsibility to approve private schools. The section entitled, "Standards for Approval of Private Schools" reads as follows:
*Standards for Approval of Private Schools*
   In order to assist private schools in its district, each school committee is encouraged to develop and promulgate, with appropriate opportunity for participation by private school officials, a written statement of policy and procedures by which the school committee approves private schools. This might contain (but not be limited to) the following:

A. School committee's general policy for private school approval under G.L. c. 76, § 1.
B. Procedures for approval (process for application and review, timetable, etc.).
C. Other agency approvals required (health, safety, building and fire inspection, etc.).
D. Records and materials required.
E. Policy and procedures for site visits to private schools.
F. Criteria for measuring "thoroughness and efficiency" of private school instruction required by law, in such areas as: length of school day and school year; school objectives; physical plant and equipment; program of studies and curriculum; staff distribution and qualifications; textbooks and materials; maintenance of student records; and compliance with applicable statutes and regulations.
   These guidelines are suggested rather than mandatory; they are intended to assist each

October 19, 1982, Porter wrote again in response to an inquiry from Chase, giving Chase a list of twelve areas of specific data the School Committee desired. (Complaint, Exhibit 5). He concluded, "it is not the School Committee's intention of qualifying [sic] your school program except for meeting the basic standards of attendance, curriculum coverage, the standards of safety for the building, and non-discrimination regulations." In response, Reverend Chase gave Porter the names and addresses of the students from East Longmeadow who attended the school. (Complaint, Exhibit 7). He provided further information in all twelve areas about the school by a letter of November 24, 1982. (Complaint, Exhibit 6). His letter stated that, "We have never sought the approval of any of our church ministries by non-religious organizations and we appreciate your concern in this area." In a letter of January 20, 1983, Mr. Porter asked for clarification of the educational backgrounds of the school's teachers and further explanation of the curriculum; he also asked if he might visit the school to observe it. (Complaint, Exhibit 8). On March 9, 1983, Reverend Chase responded to the letter, giving Mr. Porter more information and inviting him to visit the school. He also told him that the church did not want an outside organization to approve any of its ministries, and advised him that this suit had been filed. On July 13, 1983, Mr. Porter wrote to Reverend Chase, again informing him of the information necessary for approval. He stated that "[u]nless you take the steps for approval soon ... I will have to recommend that the School Committee refer this matter to town counsel for legal proceedings." (Complaint, Exhibit 9).

All defendants assert, first, that plaintiffs have presented no case or controversy justiciable under Article III of the United States Constitution; second, that the court should in any event abstain from exercising

jurisdiction; and, finally, that the complaint fails to state any cause of action.

■ In order to have standing, plaintiffs must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues...." *Larson v. Valente*, 456 U.S. 228, 238, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982). Plaintiffs challenging a statute have such a stake if they allege an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by the statute, and further show a credible threat of prosecution under the statute, or some other realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979). A case presents a "ripe" controversy if the issues it presents are fit for judicial determination at the time of suit and denial of judicial review would cause hardship to the plaintiff. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The First Circuit recently summarized the test for application of these two related doctrines as "one of realistic danger to plaintiff." *McCollester v. City of Keene, New Hampshire*, 668 F.2d 617, 619 n. 4 (1st Cir.1982).

■ The state defendants argue that no such danger is present. They correctly point out that the complaint fails to allege any action by the state to enforce or any threat to enforce the statutes in question against any of the plaintiffs. Plaintiffs do allege that the state defendants have engaged in "concerted action" with local defendants to impose upon plaintiffs "the guidelines, policies and practices" which plaintiffs challenge. The sole factual support alleged for this conclusion is the Commissioner of Education's issuance of guidelines for school approval. However, the

school committee in developing a private school approval process that is open and reasonable. A checklist of basic approval criteria, which the school committee may amplify or amend in any

reasonable way, is attached for your convenience. You may contact the staff of the appropriate Regional Education Center for further assistance."

guidelines themselves expressly state that they are suggested rather than mandatory; and there is no allegation that the state defendants were involved in any local defendant's attempts to apply the guidelines to plaintiffs in approval proceedings. Plaintiffs' complaint thus fails to allege that plaintiffs have suffered or face any realistic danger of suffering injury from the state defendants and, accordingly, the complaint warrants dismissal as to them. Plaintiffs likewise have failed to allege any real danger of injury from the Holbrook defendants. The Holbrook school superintendent's letter of July 21, 1984 requested information "in order for the Temple Christian Academy to open" but the complaint states that the Academy did open that autumn and has continued to operate. There is no further allegation of any action by or communication from the Holbrook defendants with respect to plaintiffs. The complaint therefore warrants dismissal as to them.

■ According to the complaint, the East Longmeadow defendants, through their Superintendent of Schools, have threatened legal action against plaintiffs. Therefore, the complaint of those plaintiffs connected with East Longmeadow cannot be dismissed on grounds of standing or ripeness.

There is a factual dispute as to whether the Boston defendants through their advisor of attendance threatened parents of a child attending Temple Christian Academy with prosecution. Even defendants' version of the facts, however, does not support dismissal for lack of a case or controversy. Mr. Allen in his affidavit states that he told Reverend Turner that parents who failed to send their children to approved schools might be subject to prosecution. Given the policy of liberal construction of a complaint, the Boston defendant's motion on standing grounds is denied.[9]

9. Mr. Allen's statement that he will not enforce the challenged provisions against plaintiffs pending the outcome of this suit has no bearing upon the existence of a case or controversy here for "[i]t is well settled that a defendant's volun-

■ The defendants' arguments in favor of abstention have little force. The challenged statutes are neither ambiguous nor susceptible to any construction by the state courts that would avoid or modify the federal constitutional question presented. Abstention of the kind held proper in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is therefore inappropriate here. Nor is this a case where the state has its own elaborate system for dealing with complex local issues, such as the oil and gas regulation found to warrant abstention in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and its progeny. *See Educational Services, Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 173 (4th Cir.1983). Finally, defendants' argument for abstention based on the fact that two cases pending in the state courts involve (by counterclaim) the same constitutional challenges raised in this action is unavailing in light of the statement of counsel for the state defendants at oral argument that the schools who are defendants in those state actions have ceased to operate. The court has since been informed that an order dismissing these cases has become effective. Abstention is therefore unwarranted and I proceed to the merits of the motions to dismiss the complaint for failing to state a cause of action.

## I. State Law Claims: Counts VII and VIII and Portions of Counts I, III and IV.

■ In Count VII, plaintiffs allege that the Commissioner of Education acted beyond the scope of his authority under Mass.Gen.Laws ch. 69, § 1; Count VIII alleges that the challenged approval scheme violates the Massachusetts Constitution, Amendment Article 18, § 2, by necessitating excessive entanglement be-

tary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982).

tween government and religion.[10] The Supreme Court in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) made clear that the Eleventh Amendment bars federal courts from ordering state officials to conform their conduct to state law, thus, those counts would necessarily be dismissed with respect to the state defendants even if plaintiffs could establish their standing to sue those defendants. Because Count VII relates only to conduct by the Commissioner of Education, it states no cause of action with respect to the local defendants and is dismissed as to them.

■ There remain plaintiffs' claims against the local defendants in Count VIII[11] and the portions of Counts I, III and IV based on the provisions of the Massachusetts Constitution. *Pennhurst* left open the question whether the Eleventh Amendment bars federal courts from ordering local officials to conform their conduct to state law. *Id.,* 104 S.Ct. at 920–21. The Court observed that Courts of Appeal had generally found such suits barred where the relief obtained would in essence run against the state. *Id.* at 920 n. 34. That is not so here. Moreover, the highest court of the Commonwealth has interpreted those state constitutional provisions as "cognate" with the provisions of the Federal Constitution, and actions thereunder as governed by the same criteria, *Colo v. Treasurer & Receiver General,* 378 Mass. 550, 392 N.E.2d 1195, 1200 (1979). No compelling reason thus exists why these claims should be barred under *Pennhurst.* Accordingly, the local defendants' motions to dismiss on Eleventh Amendment grounds

are denied with respect to Count VIII and the state law portion of Count I. However, they are allowed with respect to the state law portions of Counts III and IV, as they merely duplicate the claims in Count I.

II. Federal Claims.

In Count XI, plaintiffs allege that the approval scheme violates 42 U.S.C. § 1983. Plaintiffs' characterization of that statute as an independent source of substantive rights is inaccurate. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). Rather, § 1983 provides the remedy for the violations of plaintiffs' civil rights alleged in the other counts of the complaint; indeed, where § 1983 provides a remedy an implied cause of action grounded on the Constitution is not available. *Pauk v. Board of Trustees of City University of New York,* 654 F.2d 856, 865 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981). If defendants are subject to suit under § 1983, therefore, the remaining counts of the complaint raising federal constitutional claims cannot support a cause of action directly under the Constitution; the allegations therein must instead be taken to support the Count XI allegation of a § 1983 violation. Before proceeding to the merits of those counts therefore it is necessary to consider whether defendants are subject to suit under § 1983.

■ All the local defendants contend that the Eleventh Amendment bars a § 1983 suit against them because they acted as arms of the state in connection with the approval scheme.[12] The Supreme

---

**10.** Counts I, III and IV contain the other claims based on state law; all allege violation of § 1 of Amendment Article 18 of the Massachusetts Constitution, which prohibits passage of any law prohibiting the free exercise of religion.

**11.** As defendants point out, the article upon which that count is grounded by its terms prohibits use of public funds to support institutions controlled by religious organizations. *See Opinion of the Justices,* 374 Mass. 843, 371 N.E.2d 1349, 1357 (1978). Defendants argue that it therefore supports no claim by plaintiffs based on "excessive entanglement," unlike the First

Amendment to the Federal Constitution. They cite no authority for this proposition, and given dictum arguably opposed to it, *see Colo v. Treasurer & Receiver General,* 378 Mass. 550, 392 N.E.2d 1195, 1200 (1979), it is inappropriate on the submissions before me to dismiss Count VIII for failure to state a claim.

**12.** The East Longmeadow and Boston defendants also claim absolute immunity from § 1983 claims, asserting that their acts were done in a prosecutorial capacity. The assertion of a defense of immunity is clearly not grounds for dismissal of a § 1983 complaint. "By the plain

Court, addressing the question of a local school board's Eleventh Amendment immunity from suit, stated that the result "depends, at least in part, upon the nature of the entity created by state law." *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). In that case the court found that although the local school districts were subject to guidance from the Ohio State Board of Education and received a significant amount of money from the state, these factors were outweighed by the fact that the school districts had power to issue bonds and to levy taxes, and by the state law definition of them as political subdivisions. The court concluded that the school board was therefore not entitled to assert any Eleventh Amendment immunity from suit in the federal courts. The Fifth Circuit has reached the same result where the school districts in question were " 'locally controlled, essentially local in character, and the funds to defray the award would not be derived primarily from the state treasury.' " *Moore v. Tangipahoa Parish School Board,* 594 F.2d 489 (5th Cir.1979), (quoting *Campbell v. Gadsden County District School Board,* 534 F.2d 650, 656 (5th Cir.1976)). Under Massachusetts law, school committees are generally considered parts of local governments. Mass.Gen.Laws ch. 43, §§ 31, 33; *see Urban Transport, Inc. v. Mayor of Boston,* 373 Mass. 693, 369 N.E.2d 1135 (1977); *Eastern Massachusetts State Railway Co. v. Mayor of Fall River,* 308 Mass. 232, 31 N.E.2d 543 (1941). They have general charge of all public schools, Mass.Gen.

Laws ch. 71, § 37; Mass.Gen.Laws ch. 43, § 33. Funding for the school is the responsibility of local governments. Mass.Gen. Laws ch. 71, § 34.

Accordingly, under the test enunciated in *Mt. Healthy,* and on the present state of the record, the local defendants are not entitled to immunity from suit under the Eleventh Amendment. Therefore plaintiffs have a remedy under § 1983 against them and the allegations of those counts of the complaint which state a cause of action for violation of federal constitutional rights will be deemed subsumed under Count XI.

■ Count I alleges that application of the challenged approval scheme to plaintiff churches, schools, parents, students, and teachers burdens the free exercise of religion guaranteed them by the First Amendment and is unjustified by any compelling state interest. In determining whether regulation of conduct violates the free exercise clause, the court must apply a three-part test and decide (a) whether the exercise interfered with is motivated by and rooted in a legitimate and sincerely held religious belief; (b) whether and to what extent the regulation burdens the exercise; and (c) whether any such burden is justified by a sufficiently compelling state interest. *Wisconsin v. Yoder,* 406 U.S. 205, 214–15, 92 S.Ct. 1526, 1532–33, 32 L.Ed.2d 15 (1972). Defendants contend that the complaint does not allege facts establishing that the school approval scheme interferes with plaintiffs' First Amendment rights, thus, it fails to allege a legally cognizable burden on religious exercise. In particular, defendants argue that the statutory

terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). This language also negates defendants' contention that *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held local government entities to be subject to suit for damages under § 1983, required that for damages to be

imposed the alleged violation of civil rights be under local rather than state law.

Even if plaintiffs establish their standing to sue the state defendants, the Eleventh Amendment clearly bars suit against the Board of Education and Department of Education, *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); and claims for damages against the other state defendants. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The complaint would necessarily be dismissed with respect to defendant Board of Education and Department of Education even if plaintiffs established their standing to sue those defendants.

scheme does not prevent the operation of the schools; it merely bars those schools from serving to fulfill the compulsory education requirements if they do not obtain approval.

It is clear, however, that "[w]here the state conditions receipt of an important benefit upon conduct proscribed by religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists." *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981). The grant of capacity to fulfill the compulsory education requirement is an important benefit to schools, to their associated churches and teachers, and to the children attending and their parents who will otherwise be subject to truancy proceedings. Plaintiffs allege that their religious beliefs preclude them from seeking approval, the condition the state has imposed on receipt of this benefit. In light of *Thomas,* therefore, plaintiffs have stated a cause of action and defendants' motion to dismiss is accordingly denied with respect to the claims contained in Count I.[13]

■ In Count II, plaintiffs allege that the approval scheme violates the Establishment Clause of the First Amendment. "The mode of analysis for Establishment Clause questions is defined by the three-part test ... [that the] statute must have a secular legislative purpose, must have a principal or primary effect that neither advances nor inhibits religion, and must not foster an excessive governmental entanglement with religion." *Wolman v. Walter,* 433 U.S. 229, 235–36, 97 S.Ct. 2593, 2598–99, 53 L.Ed.2d 714 (1977). The complaint claims that the approval scheme fails to satisfy the third part of this test because it results in active involvement of the state in making religious determinations. Defendants argue that no factual allegations support this conclusion. However, the terms of Mass.Gen.Laws 76, § 1 (school committee to evaluate "thoroughness and efficiency" of instruction in all studies required by law) and the guidelines which East Longmeadow sought to apply to the New Life Academy (including determinations as to adequacy of textbooks, and inquiry as to educational philosophy and evidence of adequate financial support) set forth in the complaint, exhibit the potential for excessive government entanglement. *See Bangor Baptist Church v. State of Maine,* 549 F.Supp. at 1222. The First Circuit has stated that "in the sensitive area of First Amendment religious freedoms, the burden is upon the state to show that implementation of a regulatory scheme will *not* ultimately infringe upon and entangle it in the affairs of a religion to an extent which the Constitution will not countenance." *Surinach v. Pesquera de Busquets,* 604 F.2d 73, 75–76 (1st Cir.1979). That being so, plaintiffs must be held to have stated a cause of action in Count II.

■ Counts III, IV and IX allege that the challenged regulation infringes upon protected liberty and property interests in violation of the Due Process Clause of the Fourteenth Amendment.[14] The parental

---

**13.** Defendants make further arguments based upon case law establishing that putative burdens upon religious activity imposed by state regulation of education are justified. They may well prove to be correct, for as Judge Cyr pointed out in a case raising similar issues, "it is late in our constitutional history to mount a successful free exercise claim to exemption from all governmental regulation." *Bangor Baptist Church v. State of Maine, Department of Educational and Cultural Services,* 549 F.Supp. 1208, 1218 (D.Me.1982) ["Bangor Baptist"]. However, the balancing of individual and state interests required to resolve a free exercise

claim demands development of facts relating to burden and justification. *Bangor Baptist* held that summary judgment on the issue was therefore inappropriate; and clearly that balance cannot be determined on a motion to dismiss.

**14.** In Count III, plaintiff parents claim that the regulation violates their right to guide their children's education; in Count IV plaintiff churches, schools, pastor and teachers claim that the regulation violates their rights of property and enterprise; and in Count IX all plaintiffs allege an unlawful taking of property without due process of law.

right in question is a limited one. "[W]hile parents have a constitutional right to send their children to private schools and a constitutional right to select private schools that offer specialized instruction, they have no constitutional right to provide their children with private school education unfettered by reasonable government regulation." *Runyon v. McCrary*, 427 U.S. 160, 178, 96 S.Ct. 2586, 2598, 49 L.Ed.2d 415 (1976). A state may require, for example, that attendance at private schools, if it is to satisfy state compulsory education laws, be at institutions which provide minimum hours of instruction under the supervision of teachers of specified training, and covering certain prescribed subjects. *Board of Education v. Allen*, 392 U.S. 236, 245–46, 88 S.Ct. 1923, 1927–28, 20 L.Ed.2d 1060 (1968). Given the circumscribed nature of the right as established by the Supreme Court, the challenged approval scheme does not impermissibly infringe upon it.

█ Nor does the scheme infringe upon any protected property rights of plaintiffs. It in no way prevents them from operating the schools. State law conditions receipt of the benefit of approval upon compliance with the approval process. Plaintiffs have no property right in approval where the conditions requisite for its grant have not been met.[15] Plaintiffs have thus failed to state a cause of action under the Due Process Clause and Counts III, IV and IX must be dismissed.[16]

█ Plaintiffs allege in Counts V and VI that the standard for approval set forth in Mass.Gen.Laws ch. 76, § 1 is unconstitutionally vague and overbroad. The statute on its face does not reach a substantial amount of constitutionally protected conduct, indeed, it expressly prohibits denial of approval on account of religious teaching. Nor is the language impermissibly vague.

See *Bangor Baptist* at 1227 ("equivalent instruction" not overly vague). Plaintiffs thus have not met the test set forth for overbreadth and vagueness challenges in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) and Counts V and VI must be dismissed.

█ Counts X and XII allege that the regulation chills and abridges plaintiffs' First Amendment free speech rights and the rights of plaintiff students and teachers to assemble and associate. Beyond that conclusory statement, however, the complaint does not set forth any facts to show that the challenged approval scheme impinges in any way upon any plaintiff's freedom to assemble, associate or express ideas. Even if some such incidental impact might be found, the scheme satisfies the test set forth in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Accordingly, the motion to dismiss these counts is allowed.

Count XI of the complaint therefore shall be deemed to incorporate Counts I and II, and so amplified states a cause of action under 42 U.S.C. § 1983 for violation of federal constitutional rights asserted in Counts I and II.

In light of the foregoing, I make the following dispositions on the motions before me.

The motions of all defendants to dismiss the complaint for failure to state a cause of action are allowed with respect to Counts III, IV, V, VI, VII, IX, X and XII.

The motion of the Massachusetts Board of Education and the Massachusetts Department of Education to dismiss the entire complaint is allowed on Eleventh Amendment grounds.

The remaining state defendants' motion to dismiss the complaint on Eleventh Amendment grounds is allowed with re-

---

**15.** The heart of plaintiffs' allegation is not that the state has deprived them of a benefit but rather that the state is impermissibly conditioning grant of that benefit upon compliance with a procedure which violates their religious beliefs. This allegation supports a cause of action under the First Amendment, but does not impli-

cate any property rights protected by the Fourteenth.

**16.** To the extent those counts raise claims for violation of liberty of conscience protected by the First Amendment, they are duplicative of the claims in Counts I and II.

spect to Count VIII and that portion of Count I based upon state law.

The motions of the state and Holbrook defendants to dismiss the entire complaint are allowed for the additional reason that as to them plaintiffs lack standing.

The East Longmeadow and Boston defendants' motions to dismiss the complaint for failure to state a claim under state law are denied with respect to Counts I and VIII. Their motions to dismiss for failure to state a claim under federal law are denied with respect to Count XI (incorporating Counts I and II).

The Boston defendants' motion for summary judgment is denied.[17]

APPENDIX "A"

SUGGESTED
CHECKLIST FOR APPROVAL OF
A PRIVATE SCHOOL
BY A LOCAL SCHOOL COMMITTEE

| CRITERIA | COMMENTS | MET | PARTIALLY MET | UNMET |
|---|---|---|---|---|
| 1) Philosophy & Objectives<br>A. A clearly stated educational philosophy supported by definitively-stated objectives is available | | | | |
| B. The objectives are subjected to periodic review | | | | |
| C. A systematic and continuous evaluation of progress in achieving objectives is being utilized | | | | |
| 2) Physical Plant/Safety<br>A. All of the following documents are on file and are current:<br>i) Public Health Inspection<br>ii) Fire Inspection<br>iii) Certificate of Occupancy<br>iv) Lead Paint (for children under 6 years old) | | | | |
| B. The site, plant and equipment adequately support the program and are operated to ensure safety and health of the students | | | | |
| 3) Curriculum<br>A. The curriculum offerings are consistent with the philosophy and objectives of the school | | | | |

17. Thus, plaintiffs have stated a cause of action under § 1983 against the Longmeadow and Boston defendants for violation of the rights guaranteed them by the First Amendment free exercise and establishment causes; and for violation of rights guaranteed by §§ 1 and 2 of Amendment Article 18 of the Massachusetts Constitution.