· SCHOOL COMMITTEE OF CHICOPEE *vs.* CITY OF CHICOPEE
& others[1]
(and a companion case).

Hampden. April 9, 1992. - May 7, 1992.

Present: WILKINS, ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*School and School Committee*, Legal counsel. *Municipal Corporations*,
Charter.

General Laws c. 71, § 37F, which applies to all municipalities, expressly
authorizes a school committee to employ legal counsel "for the general
purposes of the committee," and an inconsistent provision of a city's
charter was ineffective to prevent that employment. [595-598]

CIVIL ACTIONS commenced in the Superior Court Department on September 21, 1990, and November 6, 1990, respectively.

The cases were consolidated and were heard by *George C. Keady, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*William J. O'Grady*, Assistant City Solicitor, for the defendants.

*Daniel J. Sheridan (Helen M. Bowler & Michael P. Sheridan* with him) for the plaintiff.

*Austin Broadhurst*, for Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

GREANEY, J. The plaintiff, the school committee of Chicopee (school committee), brought two actions in the Superior Court seeking injunctive relief against the defendants for the

---

[1] The city's mayor, treasurer, auditor and purchasing agent.
We here acknowledge the brief, amicus curiae, filed by the Massachusetts Association of School Committees, Inc.

payment of bills submitted by the school committee's legal counsel for services. A judge of the Superior Court granted the school committee's motion for summary judgment filed pursuant to Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). Judgments entered permanently enjoining the defendants from "directly or indirectly interfering with the School Committee's selection, retention and payment of its legal counsel." The defendants appealed. We granted an application for direct appellate review. We affirm the judgments.

The material facts are not in dispute. From July 1, 1988, to June 30, 1990, the school committee engaged an attorney to serve as its legal counsel. The school committee then voted to reappoint that attorney for a further two-year period. A contract with the attorney was signed. The contract provided, among other things, that the attorney was employed "as attorney and counselor at law to perform and render legal assistance to the School Committee, in relation to litigation now pending or which may arise for or against the School Committee in connection with matters under the jurisdiction of the School Committee and to render such advice to the School Committee as the School Committee may need to carry out its official functions and [*sic*] entrusted to [the attorney] by the School Committee." The city's mayor refused to approve the contract, and the other defendants refused to process the school committee's request for payment for the attorney's legal services. The city asserted that the contract was invalid because it had not been approved by the mayor.

The school committee then engaged a second attorney to represent it in obtaining injunctive relief against the defendants from interfering with payment to the first attorney at the contract rate. A preliminary injunction against such interference was granted. The second attorney submitted a statement for legal services on which the school committee requested payment. The defendants refused to process the payment request. The school committee also sought and obtained preliminary injunctive relief against the defendants, preventing interference with payment to the second attorney.

The school committee had available appropriated funds to pay both attorneys at the agreed-upon rate.

As previously indicated, on the school committee's motion for summary judgment, the defendants were "permanently enjoined from directly or indirectly interfering with the School Committee's selection, retention and payment of its legal counsel." Two judgments were entered, one as to the first attorney, and the other as to the second attorney.

In refusing payment, the defendants relied upon § 58 of the city's charter, which, in pertinent part, provides as follows: "All contracts made by any department of the city shall, when the amount involved is two hundred dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor is affixed thereto . . . ." The defendants maintained that the contracts in issue are "[o]rdinary commercial contracts," which "have never hitherto been held to belong in the field in which by long established policy and tradition school committees have exercised exclusive and untrammeled control," *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 231 (1988), quoting *Eastern Mass. St. Ry.* v. *Mayor of Fall River*, 308 Mass. 232, 237 (1941), and hence the contracts were subject to mayoral approval under § 58 of the city charter.

The school committee relies upon G. L. c. 71, § 37F (1990 ed.), which provides as follows: "The school committee of a city or town may employ legal counsel for the general purposes of the committee and may expend money therefor from the funds appropriated by said city or town for school purposes. Said legal counsel shall not be subject to the provisions of section nine A of chapter thirty or the provisions of chapter thirty-one." The school committee maintains that this general law, which applies to all municipalities, expressly authorizes the school committee to employ legal counsel "for the general purposes of the committee" (as was the case here), and as such renders an inconsistent charter provision, such as § 58, ineffective to prevent that employment. The

legislative background of § 37F indicates that the school committee is correct.

Mindful, perhaps, of the language in *O'Reilly* v. *Scituate*, 328 Mass. 154 (1951), that "in the absence of legislative authority, it is settled that a department of a city or town has no authority to employ counsel," the Legislature enacted c. 362 of the Acts of 19.70, applicable to school committees. This statute inserted a new § 37F into c. 71 of the General Laws as follows:

> "In any city or town which accepts this section, the school committee may make expenditures, from funds appropriated for school purposes, for the employment of legal counsel for the general purposes of the committee, and the provisions of section thirty-seven E shall not apply. The provisions of section nine A of chapter thirty, and chapter thirty-one, shall not apply to such counsel."

By c. 86 of the Acts of 1972, the Legislature rescinded the local option requirement in the above statute, but placed a limit on expenditures by a school committee for legal counsel without prior approval of the mayor, the city manager or the board of selectmen. As a result of this change, the revised § 37F read as follows:

> "The school committee of a city or town may employ legal counsel for the general purposes of the committee and may expend money therefor from the funds appropriated by said city or town for school purposes, provided, however, not more than five thousand dollars in addition to the expenditures authorized by section thirty-seven E shall be expended during any fiscal year without prior approval of the city manager in a city having Plan D or Plan E form of government, the mayor in any other city or the board of selectmen in a town. Said legal counsel shall not be subject to the provisions of section nine A of chapter thirty or the provisions of chapter thirty-one."

Finally, by means of § 3 of c. 523 of the Acts of 1985, the Legislature removed any dollar limit on the amount a school committee might expend for legal counsel for its general purposes. This version of § 37F read as follows:

> "The school committee of a city or town may employ legal counsel for the general purposes of the committee and may expend money therefor from the funds appropriated by said city or town for school purposes. Said legal counsel shall not be subject to the provisions of section nine A of chapter thirty or the provisions of chapter thirty-one."

However, a second provision of c. 523 increased from $10,000 to $25,000 the amount a school committee might expend for legal counsel employed "in connection with collective bargaining with employee organizations for school employees . . . without the prior approval of the mayor, the city manager in a city having Plan D or Plan E form of government, or the board of selectmen." See G. L. c. 71, § 37E (1990 ed.).

The fact that the above two provisions — one retaining an expenditure limit for the retention of legal counsel by a school committee for a specified purpose unless executive approval is granted, and the other eliminating such a limit when counsel is employed for the school committee's general purposes — are contained in the same chapter is, in our view, a clear statement of legislative purpose concerning the power of a school committee to retain counsel in circumstances like those before us. The background of St. 1985, c. 523, further confirms that purpose because the bills which were eventually combined into c. 523 were filed at the request of the Massachusetts Association of School Committees, Inc.

Section 37F of G. L. c. 71 is a law which has general application to all municipalities. The provisions of the statute are plain and unambiguous and must be applied to accomplish its main object which is to permit school committees to

hire counsel for general purposes. See *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). A charter provision such as § 58 cannot impede such application and purpose. As the judge correctly determined with respect to the contracts in issue, State law precludes the exercise of inconsistent local authority to disapprove.

*Judgments affirmed.*